Michael Lee
Morrison & Lee LLP
1745 Broadway
17th Floor
New York, NY 10106
Telephone: (212) 858-9596
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AKILAH HUGHES,<br><br>    Plaintiff,<br><br> v.<br><br>CARL BENJAMIN a/k/a "SARGON OF AKKAD"; and "JOHN DOES" 1-10,<br><br>    Defendants. | CASE NO. 17-cv-6493<br><br>**COMPLAINT** |

Plaintiff Akilah Hughes ("Hughes") by her attorneys Morrison & Lee LLP, for her complaint against defendants Carl Benjamin a/k/a "Sargon of Akkad" ("Benjamin") and "John Does" 1- 10 (hereinafter collectively referred to as the "Defendants") hereby alleges as follows:

### STATEMENT OF THE CASE

1. Hughes is a well-known writer, comedian, influencer, host, and creator with a substantial online following. Hughes produces and develops an array of original content which she shares with her audience through her proprietary website among other mediums, including the popular video-sharing platform at www.youtube.com ("YouTube").

2. During the night of the stunning 2017 Presidential election, Hughes had the rare opportunity to cover the live events taking place at Democratic candidate Hillary Clinton's watch party. She captured footage depicting the raw emotion of the crowd as attendees learned of the

election results and began to process and accept what would ensue in the days and years to come with Donald Trump in office. Using this priceless material, Hughes created, edited, and published an original video essay detailing her unique viewpoint and sharing footage shot throughout this unforgettable night.

3. Defendants, particularly Benjamin, have been habitually outspoken against many of the political positions for which Hughes campaigns and which were included in her election night video. In an attempt to discredit Hughes and her political positions and without a license or permission, Defendants copied and uploaded wholesale reproductions of Hughes's original content onto the Internet. Defendants continued to do so even after being placed on notice that their activities are infringing and after the video was removed by YouTube for copyright infringement.

4. As a result of this willful and malicious conduct, Hughes is forced to file this action for injunctive relief, actual or statutory damages, attorneys' fees, and costs for Defendants' abhorrent behavior concerning their unauthorized use, reproduction, and distribution of Hughes's copyrighted work.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the federal copyright claims under 28 U.S.C. §§ 1331 and 1338(a).

6. Defendants are subject to the Court's jurisdiction because they have committed the acts complained of herein in this District and do business in this District.

7. Defendants are subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

9. Hughes is an individual residing in New York, New York.

10. Upon information and belief, defendant Carl Benjamin, also known online as "Sargon of Akkad," is an individual of British citizenship residing at 176 Westcott Place, Swindon, Wiltshire SN1 5HT, England.

11. The identities of "John Does" 1-10 are not currently known to Hughes. Upon information and belief, they are associated with Benjamin and have contributed to Benjamin's unlawful activities. Hughes will use her best efforts to identify these "John Does", and upon further knowledge and investigation, Hughes will amend her pleadings accordingly.

## FACTUAL ALLEGATIONS

12. Hughes is a popular content creator and filmmaker who publishes video content on the Internet via her website located at http://itsakilahobviously.com and her YouTube channel, entitled "Akilah Obviously," located at http://www.youtube.com/smoothiefreak (the "YouTube Channel"). Hughes's body of work covers a broad range of topics including comedy, race, social commentary, feminism, beauty, and fashion.

13. Hughes has received training as a comedian and writer from the world-renowned Upright Citizen's Brigade. She has also received many accolades as a social influencer with her content and work having been featured in various media publications, including Fusion, HelloGiggles, Femsplain, and Refinery29.

14. Since January 2006, Hughes has uploaded a plethora of video content to her YouTube Channel. Hughes's content, production, and reach have evolved significantly since her channel's inception, in great part due to her ambition, drive, hard work, and goodwill established in her brand. On the date of the filing of this Complaint, Hughes's YouTube Channel has 155,223 subscribers, and her videos enjoy a total of over ten million views. In addition to her YouTube audience, Hughes has built up an extensive following on Twitter, where she has approximately

114,000 followers.

15. On November 8, 2016, Hughes attended Presidential candidate Hillary Clinton's election night headquarters at the Jacob Javits Convention Center (the "Javits Center") in New York City. Attending with press credentials, Hughes filmed the unparalleled events firsthand. Over the course of the evening, Hughes captured the roller coaster of emotions that permeated the Javits Center, from the electric energy of anticipation to the crestfallen realization of defeat.

16. Shortly thereafter, Hughes used the video footage captured that night to create a video essay portraying her reaction to the Presidential election and her thoughts and commentary on the incoming Presidential administration. The end result is a 9 minute and 50 second audio-visual work entitled, "We Thought She Would Win."

17. On November 18, 2016, Hughes published "We Thought She Would Win" for streaming and download on YouTube. See, Akilah Obviously, *We Thought She Would Win*, YOUTUBE (Nov. 18, 2016), https://www.youtube.com/watch?v=2IY9iAlNbPE [https://perma.cc/GJ9N-RALK] (the "Copyrighted Work").

18. Hughes is the sole owner of the copyright and all other rights in and to the Copyrighted Work, which has been registered with the United States Copyright Office (the "Copyright Registration").

19. The Copyrighted Work received immediate praise for its raw emotion and political commentary and quickly received overwhelming numbers of views and shares on social media. The Copyrighted Work was on its way to becoming one of Hughes's most popular videos.

20. On or about November 19, 2016, Hughes became aware that Defendants had copied and uploaded an unauthorized one minute and twenty-eight second series of clips from the Copyrighted Work onto Benjamin's YouTube channel, titling the unauthorized reproduction of the Work "SJW Levels of Awareness" (the "Infringing Work"). The "SJW" designation in the title is an

abbreviation for "social justice warrior," a title routinely used by Benjamin in a demeaning context to belittle proponents of perceived liberal social policies and stances.

21. The Infringing Work provides no additional content, commentary, or criticism of the Copyrighted Work, its contents, or Hughes, and contains no additional expression whatsoever; it is a bare, retitled compilation of clips of the Copyrighted Work. Defendants include <u>no original content in the Infringing Work.</u>

22. Simply put, Defendants merely downloaded, copied, and re-uploaded substantial portions of the Copyrighted Work without the authorization of the copyright owner, Hughes.

23. Defendants unauthorized copying, reproduction, distribution, and display of portions of the Copyrighted Work constitutes blatant and willful copyright infringement.

24. Subsequently, Hughes issued a takedown notice requesting that the Infringing Work be removed from YouTube for copyright infringement pursuant to Section 512 of the Digital Millennium Copyright Act (the "DMCA") (the "DMCA Notice"). The DMCA provides an avenue through which copyright owners are able to submit to third-party hosts, such as YouTube, notice of alleged acts of copyright infringement and by which such hosts are required to then provide notice of same to the alleged infringer.

25. In response to the DMCA Notice, YouTube disabled access to the Infringing Work on its site.

26. On November 19, 2016, Benjamin contacted Hughes privately via email and publicly via Twitter, seeking a retraction of her DMCA Notice, which Hughes rightfully declined. In his email, Benjamin admitted that "I've been through this process with YouTube many times now."

27. Despite their knowledge that the Infringing Work had been removed for copyright infringement, and despite Hughes's refusal to grant permission to use her Copyrighted Work, Defendants continued engaging in their illicit activities.

28. Later that same day, Defendants again uploaded the Infringing Work, this time to their Twitter account under the handle @Sargon_of_Akkad (the "Defendants' Twitter Account"). A true and correct copy of this tweet can be found below:



29. The Infringing Work remained accessible and viewable to the public until on or about August 9, 2017 when Defendants' Twitter Account was suspended.

30. On November 22, 2016, Defendants then frivolously and fraudulently submitted to YouTube a counter notification (the "Counter Notice") pursuant to the DMCA affirming under penalty of perjury that the Infringing Work was improperly removed because it was, among other reasons, a fair use and "entirely transformative" when, in fact, this was an outright lie. The Infringing Work contains no new meaning or original expression beyond that embodied in the Copyrighted Work nor does it contain a single modification or even parody the Copyrighted Work.

31. According to 17 U.S.C. § 512, a notification of claimed infringement must include a statement under penalty of perjury that the notification is accurate, among other things.

32. Benjamin, as the signatory acting as agent for Defendants, did in fact submit the Counter Notice containing blatantly inaccurate statements and assertions, thus committing perjury as defined by 18 U.S.C. § 1621. A true and correct copy of the Counter Notice is attached hereto as **Exhibit A**.

33. There can be no doubt that Defendants' infringement in this case was willful. Aside from the events described above, Benjamin has publicly been involved in many disputes involving copyright infringement and DMCA issues.

34. Benjamin is a controversial content creator and filmmaker who, like Hughes, publishes his content online on his YouTube channels, including "Sargon of Akkad" located at https://www.youtube.com/user/SargonofAkkad100 and "The Thinkery" located at https://www.youtube.com/channel/UCpiCH7qvGVlzMOqy3dncA5Q. Benjamin self-describes his work as anti-ideological and anti-identitarian and routinely engages and criticizes viewpoints on various social and political issues. Benjamin's work regularly focuses on subjects including "the left", racism, feminism, Black Lives Matters, and Islam. In addition to his periodic uploads, Benjamin has also hosted recurring series on his channel, including "Why Do People Hate #Feminism" and "This Week in Stupid."

35. Due to the nature, subject matter, and presentation of his content, Benjamin regularly is the subject of media coverage and is publicly known for his provocative style and strongly-held beliefs against liberal social and political stances.

36. This not the first time that Benjamin has been accused of copyright infringement. His prior dealings and his own statements show that he is familiar both with the concept and bounds of the doctrine of Fair Use.

37. On June 9, 2015, Benjamin uploaded the video "Heart of Stereotypes" to his YouTube channel "Sargon of Akkad". This video served as a scathing commentary on a video uploaded to the YouTube channel of the popular British newspaper The Guardian who took issue with Benjamin's provocative critique, and issued a takedown notice to YouTube pursuant to the DMCA to remove "Heart of Stereotypes" from YouTube. This takedown notice was based on Benjamin's use of the entirety of The Guardian's video in his own.

38. In response to The Guardian's takedown notice, YouTube disabled the "Heart of Stereotypes" on its site. Following, in an ensuing litany of high profile press coverage and public statements on Twitter, Benjamin and his supporters defended Benjamin's video as non-infringing fair use commentary.

39. Upon information and belief, Benjamin is also the owner of the YouTube Channel entitled "The New Memedia", a channel which, upon information and belief, was terminated on or around March 2017 as a result of multiple third-party claims of copyright infringement concerning material that Benjamin uploaded to the channel.

40. Beyond deactivation of his channel "The New Memedia" for repeated copyright infringement, Benjamin has been involved in high-visibility disputes that question whether his content qualifies as non-infringing fair use of others' works.

41. Benjamin is clearly well aware of and possesses knowledge regarding the DMCA process, the legal concepts and principles defining copyright law, and the boundaries of fair use. Therefore, his infringing activities in this case are undeniably willful.

42. Defendants' actions complained of herein constitute an egregious display of bad faith. Defendants were clearly motivated by and chose to selectively target Hughes based on her disparate political beliefs. It is obvious that Hughes was unduly singled out by Defendants in a vindictive attempt to stifle her creative liberties in favor of Defendants' own interests. Defendants'

malicious, unauthorized, and unlawful conduct has caused Hughes irreparable harm.

43. Defendants have willfully infringed on the Copyrighted Work to Hughes's substantial detriment leaving Hughes without adequate remedies at law.

44. Upon information and belief, Defendants have unfairly derived profits from the Infringing Work in the form of advertising revenues generated from its upload to and availability on YouTube. Upon information and belief, Defendants have also unfairly benefited, deriving profits from increased popularity of their YouTube channel attributed to the Infringing Work.

### FIRST CLAIM FOR RELIEF
**(Federal Copyright Infringement, 17 U.S.C. § 501)**

45. Hughes repeats and re-alleges the allegations in the preceding paragraphs 1-44 of this Complaint.

46. Hughes is the creator and sole owner of all right, title, and interest in and to the Copyrighted Work.

47. Pursuant to 17 U.S.C. § 106, Hughes has the exclusive rights to copy, reproduce, distribute, publicly display, and prepare derivative works based on the Copyrighted Work.

48. Defendants have unlawfully copied, reproduced, distributed, and publicly displayed substantial portions of the Copyrighted Work which is protected and covered by the Copyright Registration.

49. Hughes has never authorized Defendants, by license or otherwise, to duplicate, distribute, or in any other way utilize the Copyrighted Work.

50. Defendants' acts constitute infringement of the exclusive rights afforded to Hughes under 17 U.S.C. § 106 and by virtue of the Copyright Registration.

51. Defendants knew and/or had reason to know that their use of the Copyrighted Work,

without any substantive modification or contribution of original material or additional and/or transformative meaning or expression, does not constitute Fair Use as defined in 17 U.S.C. § 107.

52. Defendants have committed all the acts alleged herein deliberately, willfully, and with reckless disregard for Hughes's rights.

53. Defendants have continued to infringe the Copyrighted Work and unless permanently enjoined by order of this Court, will continue to infringe the Copyrighted Work, all to Hughes's irreparable injury and detriment leaving Hughes without an adequate remedy at law.

54. Hughes is entitled to actual damages and Defendants' profits attributable to their infringement of the Copyrighted Work or, at Hughes's election, pursuant to 17 U.S.C. § 504(c), statutory damages for Defendants' willful copyright infringement not to exceed $150,000 per work.

## SECOND CLAIM FOR RELIEF
### (DMCA Misrepresentation, 17 U.S.C. § 512(f))

55. Hughes repeats and re-alleges the allegations in the preceding paragraphs 1-54 of this Complaint.

56. Upon information and belief, Defendants knew that the publication of the Infringing Work was an infringement of Hughes's rights in the Copyrighted Work.

57. In the Counter Notice, issued under the authority of 17 U.S.C. § 512, Defendants knowingly and materially misrepresented that the publication of the Infringing Work was fair use when, in fact, it was not.

58. In the Counter Notice, issued under the authority of 17 U.S.C. § 512, Defendants knowingly and materially misrepresented that their use of the Copyrighted Content was "entirely transformative" and "intended for parody" when, in fact, it was not.

59. Hughes has been injured by such misrepresentation as YouTube, her hosting service

provider, relied upon the misrepresentation to reinstate certain features of their service, including allowing for the continued public display of the Infringing Work.

60. The Infringing Work did not contain even a single supplementation by Defendants of any original material or additional and/or transformative meaning or expression.

61. Hughes has been damaged by Defendants' activities.

62. Hughes is entitled to actual and punitive damages, including costs and attorneys' fees, pursuant to 17 U.S.C. § 512(f).

63. In addition, as a result of Defendants' activities, Hughes has suffered, and will continue to suffer, irreparable injury not fully compensable in monetary damages, and is therefore entitled to an injunction enjoining Defendants from further engaging in their wrongful activities.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Hughes respectfully requests that the Court order the following relief:

I.   That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

   a)   reproducing or distributing any of Hughes' copyrighted works; and

   b)   from in any manner infringing or contributing to or participating in the infringement by others of any of the copyrights in Hughes' works, and from acting in concert with, aiding, or abetting others to infringe any of said copyrights in any way;

II.   That Defendants be required to pay to Hughes any actual or statutory damages, if Hughes so elects, of up to $30,000 for each copyrighted work infringed for all infringements with respect to that work, pursuant to 17 U.S.C. § 504(c)(1). If the Court finds that any infringement was committed willfully, Hughes prays for statutory damages, if Hughes so elects, of up to $150,000

for each copyrighted work infringed for all willful infringements with respect to that work, pursuant to 17 U.S.C. § 504(c)(2);

III. That Defendants be required to pay to Hughes actual and punitive damages, including costs and attorneys' fees, pursuant to 17 U.S.C. § 512(f).

IV. That Defendants, within ten (10) days of judgment, take all steps necessary to remove all text, media, online posts, and/or any other unauthorized reproductions of the Copyrighted Work;

V. Directing that this Court retain jurisdiction of this action for the purpose of enabling Hughes to apply to the Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof;

VI. Ordering that pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful and fraudulent injury to Hughes;

VII. That Hughes recovers her costs of suit including reasonable attorney's fees incurred herein, pursuant to 17 U.S.C. §412 and 17 U.S.C. § 505;

VIII. Awarding to Hughes such other and further relief as the Court may deem just and proper, together with the costs and disbursements that Hughes has incurred in connection with this action.

**MORRISON & LEE LLP**

Dated: August 25, 2017

_____
Michael Lee
Morrison & Lee LLP
1745 Broadway
17th Floor
New York, NY 10106
Telephone: (212) 858-9596

Attorneys for Plaintiff Akilah Hughes