**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AKILAH HUGHES,

                Plaintiff

        v.                         17 CV 6493 (RJS)

CARL BENJAMIN,
a/k/a Sargon of Akkad, et al.,

                Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**SARGON OF AKKAD'S MOTION TO DISMISS**

---

Wesley M. Mullen (WM1212)
MULLEN P.C.
200 Park Avenue | Suite 1700
New York, NY 10166
(646) 632-3718
wmullen@mullenpc.com

*Counsel for Defendant*

# TABLE OF CONTENTS

– * –

**PRELIMINARY STATEMENT**..............................................1

**STATEMENT OF FACTS**.................................................4

    **I.**   **Plaintiff's Video:**
        **"We Thought She Would Win"**...........................4

    **II.**  **Defendant's Critical Video:**
        **"SJW Levels of Awareness"**............................5

**LEGAL STANDARD**....................................................8

**ARGUMENT**..........................................................9

    **I.**   **The Complaint Fails to Plead A Claim**
        **For Copyright Infringement Because the**
        **Critical Video is Quintessential Fair Use**............9

        A.   Fair Use is Properly Resolved
            On a Motion To Dismiss..........................9

        B.   The Critical Video is Fair Use.................12

            1.   Transformative Purpose & Character........13

            2.   Nature of the Copyrighted Work............18

            3.   Amount and Substantiality of Use..........19

            4.   Effect on the Market......................20

    **II.**  **The Complaint Fails to Plead a Claim**
        **For DMCA Misrepresentation**.........................21

        A.   YouTube Did Not Rely on Any
            Purported Misrepresentation....................22

        B.   The Complaint Fails to Plead
            an Actionable Misrepresentation................23

**CONCLUSION**.......................................................25

**TABLE OF AUTHORITIES**

<u>Cases</u>

<u>Ariel (UK) Ltd. v. Reuters Group, PLC</u>,
     277 Fed. Appx. 43 (2d Cir. 2008)......................................15

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)..................................8, 9

<u>Authors Guild v. Google, Inc.</u>, 804 F.3d 202 (2d Cir. 2015)..........12-13, 18

<u>Authors Guild, Inc. v. HathiTrust</u>, 755 F.3d 87 (2d Cir. 2014)..............20

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)...........................8, 9

<u>Blanch v. Koons</u>, 467 F.3d 244, 251 (2d Cir. 2006)...................13, 18-20

<u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569 (1994)................13, 19

<u>Cariou v. Prince</u>, 714 F.3d 694 (2d Cir. 2013)..................10, 13, 19, 20

<u>Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.</u>,
     No. 14-cv-9270 (RJS), 2016 WL 7507757,
     2016 U.S. Dist. LEXIS 180431 (S.D.N.Y. Dec. 30, 2016)..............8, 9

<u>Goel v. Bunge, Ltd.</u>, 820 F.3d 554 (2d Cir. 2016)........................4, 11

<u>Hosseinzadeh v. Klein</u>, No. 16-cv-3081 (KBF), 2017 WL 3668846,
     2017 U.S. Dist. LEXIS 134910 (S.D.N.Y. Aug. 23, 2017)............passim

<u>Lenz v. Universal Music Corp.</u>,
     815 F.3d 1145, 1153-54 (9th Cir. 2016).......................10, 23, 24

<u>Lombardo v. Dr. Seuss Enters., L.P.</u>, 279 F. Supp. 3d 497
     (S.D.N.Y. Sept. 15, 2017).......................................passim

<u>NXIVM Corp. v. Ross Inst.</u>, 364 F.3d 471, 477 (2d Cir. 2004)............14, 20

<u>Oyewole v. Ora</u>, No. 16-cv-1912 (AJN),
     2018 U.S. Dist. LEXIS 39139 (S.D.N.Y. Mar. 7, 2018)..........10, 16, 19

<u>TCA TV Corp. v. McCollum</u>, 839 F.3d 168 (2d Cir. 2016)..................10, 19

<u>Statutes and Rules</u>

17 U.S.C. § 107.........................................................passim

17 U.S.C. § 512(f)......................................................3, 21-24

Fed. R. Civ. P. 12(b)...................................................passim

Fed. R. Civ. P. 12(c)...................................................10

Fed. R. Civ. P. 12(h)...................................................9

Defendant Carl Benjamin, known to his internet audience as Sargon of Akkad ("Defendant" or "Sargon"), respectfully submits this memorandum of law in support of his motion to dismiss the Complaint (ECF Doc. No. 1) in this action in its entirety and with prejudice pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

In this copyright action, Plaintiff Akilah Hughes ("Plaintiff" or "Hughes") and Defendant Sargon are both YouTube celebrities. (Compl. ¶¶ 1, 3, 12, 14, 34-35.) Plaintiff publishes video content under the name "Akilah Obviously." (Id. ¶ 12.) Hughes and Sargon have both achieved renown for their commentary on controversial social and political topics. (See id. ¶¶ 16, 19, 34-35.)

Plaintiff and Defendant are ideological opponents. Sargon mocks and criticizes leftist and feminist viewpoints, among others. (Id. ¶ 34.) Hughes is a leftist, and a feminist. (See id. ¶ 12, 20.)

As alleged in the Complaint, on election night 2016, Hughes published a video ("Plaintiff's Video") of events at Hillary Clinton's presidential campaign headquarters. (Id. ¶¶ 15-17.) Plaintiff titled the work "We Thought She Would Win" – a reference to the widely-held expectation that Clinton would prevail over Trump in the U.S. presidential election. (Id.) Plaintiff's Video depicts Hughes's surprise – and the surprise of others in the

Javits Center press room – as they watch the electoral returns. The mood progresses gradually from the "electric energy of anticipation to the crestfallen realization of defeat." (Id.)

Defendant Sargon saw Hughes's video on the internet. He observed in it hypocrisy and naïveté. Sargon edited and condensed Plaintiff's Video into a new and critical work (the "Critical Video"), which he then published on his own YouTube channel. By juxtaposing clips of Plaintiff's own statements, the Critical Video exposed – and thereby mocked – Hughes's unself-conscious confession that she is "surrounded by like minded people." Sargon's Critical Video begs the viewer to reevaluate the commentary in Plaintiff's Video. It does so by impeaching Hughes – the video's narrator – with her own admissions.

Sargon titled his video "SJW Levels of Awareness" to mock (what Sargon perceived as) Hughes's lack of awareness. "SJW" is an abbreviation for "social justice warrior," a term that demeans and belittles Hughes's leftist views. (Id. ¶ 20.) Overall – as the Complaint concedes – the Critical Video is an "attempt to discredit [Plaintiff] and her political positions." (Id. ¶ 3.)

Sargon's critical aim was true. Hughes took offense. She then issued a takedown notice to YouTube and had the Critical Video censored from the internet. (Id. ¶¶ 24-25.) When Sargon sought reinstatement of the Critical Video, Plaintiff filed this action.

The Complaint pleads, in conclusory terms, that the Critical Video "provides no additional content, commentary, or criticism" of Plaintiff's Video or Plaintiff herself.  (Id. ¶ 21.)  But the averments in the Complaint itself put the lie to that assertion. The Complaint concretely establishes that Defendant's video is criticism and mockery; it is therefore transformative, commentative, and quintessential fair use as a matter of law. Dismissal under Rule 12(b)(6) is warranted.

The Complaint asserts two claims for relief.  The claim for copyright infringement fails because Defendant's work is fair use under Section 107 of the Copyright Act.  The Complaint pleads ample facts to demonstrate that the Critical Video is a mockery of Plaintiff's Video, and further that it is not a substitute for Plaintiff's market or audience.  The works themselves are properly considered – and compared – by the Court on this motion to dismiss. As such, the issue of fair use should be resolved now, and Plaintiff's infringement claim dismissed with prejudice.

Plaintiff's second claim seeks damages for DMCA misrepresentation under 17 U.S.C. § 512(f).  It fails because the Complaint omits to plead reliance by YouTube on any actionable misrepresentation, as required for liability to attach under the statute.

For these reasons and those following, dismissal of the Complaint in its entirety and with prejudice is warranted.

### STATEMENT OF FACTS[1]

**I.    Plaintiff's Video:   "We Thought She Would Win"**

Plaintiff is a popular web personality and comedian.  She posts videos for public consumption, at no cost to the viewer, on her website and on YouTube.  (See Compl. ¶¶ 1, 12-14.)  Plaintiff has a dedicated YouTube channel, "Akilah Obviously," which distributes videos containing Plaintiff's commentary and views on a range of topics "including comedy, race, social [issues], feminism, beauty and fashion."  (Id. ¶ 12.)

On November 18, 2016, Plaintiff posted Plaintiff's Video, titled "We Thought She Would Win."  (Id. ¶ 17.)  Plaintiff registered copyright in the video.  (Id. ¶ 18.)

In Plaintiff's Video, Hughes appears and presents "a video essay portraying her reaction to the [2016 U.S.] Presidential election and her thoughts and commentary on the incoming Presidential administration."  (Id. ¶ 16.)  The work portrays Plaintiff attending Democratic Presidential candidate Hillary Clinton's election night party.  It "capture[s] the roller coaster of emotions … from the electric energy of anticipation to the crestfallen realization of defeat."  (Id. ¶ 15.)

---

[1] This statement of facts is drawn from the Complaint and matters incorporated in the Complaint by reference.  See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (acknowledging that a court ruling on a 12(b)(6) motion may consider the complaint, documents appended to the complaint or documents incorporated in the complaint by reference) (citation omitted).

According to Plaintiff, her work "received immediate praise for its raw emotion and political commentary and quickly received overwhelming numbers of views and shares on social media."  (Id. ¶ 19.)

Plaintiff's Video is nine minutes and 50 seconds long.

A copy of Plaintiff's Video is submitted in support of this Motion, (Mullen Decl. Ex. A), along with a transcript of the video, (id. Ex. B).  The Parties agree that the file submitted is Plaintiff's Video as identified in the Complaint.  (Id. Ex. E.)

## II.  Defendant's Critical Video:  "SJW Levels of Awareness"

The Complaint describes Sargon as "a controversial content creator and filmmaker who, like [Plaintiff], publishes his content online on his YouTube channels."  (Id. ¶ 34.)  Sargon has a substantial fan base who follow his YouTube videos, his public appearances, and the controversy that surrounds him in his career as a public intellectual and polemicist.  (Id.)

Unlike Plaintiff, Sargon espouses an "anti-ideological and anti-identitarian" point of view.  (Id.)  The Complaint avers that Sargon "routinely engages and criticizes viewpoints on various social and political issues," particularly "'the left', racism, feminism, Black Lives Matter[], and Islam."  (Id.)  So much so, in fact, that Defendant "regularly is the subject of media coverage and is publicly known for his provocative style and strongly-held

beliefs   against   liberal   social   and   political   stances."
(Id. ¶ 35.)

Plaintiff alleges that, shortly after she posted Plaintiff's
Video, she became aware of the Critical Video on Sargon's YouTube
channel.   Sargon   titled   the   Critical   Video   "SJW   Levels   of
Awareness."   (Id. ¶ 20.)   It consists of a "series of clips" from
Plaintiff's   Video.   (Id.)   As the Complaint explains, the term
"SJW" in the title "SJW Levels of Awareness" refers in a demeaning
way to "Social Justice Warriors" – i.e., "proponents of perceived
liberal social policies and stances." (Id. ¶ 20.) The belittling
title of the Critical Video further carries out Sargon's intended
message:   mockery of Plaintiff's Video, of Plaintiff, and of the
views Plaintiff expresses in her work.   (Id. ¶ 20.)

The Critical Video mocks Hughes by condensing the narrative
arc of Plaintiff's Video; by juxtaposing Hughes's contradictory
statements against one another; and by exposing what Sargon viewed
as hypocrisy.   The Critical Video thus uses Plaintiff's own words
against her.

For instance, Hughes tells her audience that "[t]here are
plenty of people whose best interest is to keep everybody divided
and to keep them hating people who don't look like them." (Mullen
Decl. Exs. A, B.)   In Plaintiff's Video, this is followed by a
minutes-long discussion of social media and healthcare.   (Id.)
The Critical Video, by contrast, cuts to Hughes explaining that

"what's helpful for me is that I live in New York.  I'm surrounded by like-minded people."  (Id. Exs. C, D.)  By skillful video editing, Sargon exposes that Hughes is one of the very people who is "divided" and separated from "people who don't look like [her]."  The title "SJW Levels of Awareness" satirically leads the audience to the inference Sargon intends:  that Hughes's level of awareness, at least in Sargon's estimation, is low.

The Complaint concedes that Sargon was "clearly motivated by and chose to selectively target [Plaintiff] based on her disparate political beliefs."  (Id. ¶ 42.)  It rightly observes Sargon's transformative motive and purpose:  the Critical Video is "an attempt to discredit [Plaintiff] and her political positions," consistent with Sargon's reputation for being "habitually outspoken against many of the political positions for which [Plaintiff] campaigns."  (Id. ¶ 3.)

The Critical Video runs just 118 seconds long, compared to Plaintiff's Video's nine minutes and 50 seconds.  (Id. ¶¶ 16, 20.)

A copy of the Critical Video is submitted in support of this Motion, (Mullen Decl. Ex. C), along with a transcript of the video, (id. Ex. D).  The Parties agree that the file submitted is the Critical Video as identified in the Complaint.  (Id. Ex. E.)

* * *

Hughes issued a takedown notice to YouTube pursuant to Section 512 of the Digital Millennium Copyright Act ("DMCA"),

requesting that the Critical Video be removed from YouTube on grounds of copyright infringement.  (Id. ¶¶ 21, 24.)  YouTube disabled public access to the Critical Video.  (Id. ¶ 25.)  Defendant submitted a counter-notification requesting reinstatement and asserting that the Critical Video constituted fair use: "satire" that is "entirely transformative" and "intended for parody."  (Id. ¶¶ 30, 58 & Ex. A (defendant's counter-notification).)

YouTube has not reinstated the Critical Video.  Hughes has not withdrawn her DMCA takedown notice.  Plaintiff filed this action on August 25, 2017.  Defendant now responds.

LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., No. 14-cv-9270 (RJS), 2016 WL 7507757, 2016 U.S. Dist. LEXIS 180431 at *5 (S.D.N.Y. Dec. 30, 2016) (quoting Iqbal, 556 U.S. at 678).  "If the plaintiff 'ha[s] not nudged [its] claims across the

line from conceivable to plausible, [its] complaint must be dismissed.'" Id. (quoting Twombly, 550 U.S. at 570).

### ARGUMENT

The Complaint asserts that Sargon's Critical Video infringes copyright in Plaintiff's Video. But Plaintiff's own admissions, along with a comparison of the two works, establish that the Critical Video is noninfringing fair use as a matter of law. The Complaint therefore fails to state a plausible claim and cannot survive dismissal under Federal Rule 12(b)(6).[2]

## I.   The Complaint Fails to Plead a Claim For Copyright Infringement Because the Critical Video is Quintessential Fair Use

Plaintiff's first claim for copyright infringement fails to satisfy the minimum standard of "facial plausibility" required by Rule 12(b)(6). Creazioni Artistiche Musicali, 2016 U.S. Dist. LEXIS 180431 at *5 (quoting Iqbal, 556 U.S. at 678). The motion record makes clear that Sargon's Critical Video is fair use.

### A.   Fair Use Is Properly Resolved On a Motion to Dismiss

Fair use under Section 107 of the Copyright Act is an affirmative defense to copyright infringement. It is well-

---

[2] For purposes of this motion, Defendant assumes the truth of all allegations in the Complaint – including, e.g., that Plaintiff owns a valid copyright, and that the Copyright Act applies to Defendant's conduct outside the United States. Defendant does not waive, and hereby expressly reserves, all defenses to Plaintiff's claims in this action. See Fed. R. Civ. P. 12(h).

established in this District that fair use is properly resolved on a motion to dismiss where the defense is clearly established on the face of the complaint.  See TCA TV Corp. v. McCollum, 839 F.3d 168, 178 (2d Cir. 2016) (citing Cariou v. Prince, 714 F.3d 694, 707 (2d Cir. 2013)); Oyewole v. Ora, No. 16-cv-1912 (AJN), 2018 U.S. Dist. LEXIS 39139 at *16-*28 (S.D.N.Y. Mar. 7, 2018) (granting 12(b)(6) motions to dismiss copyright infringement claims on the basis of fair use).  Indeed, courts have held that because the Copyright Act expressly authorizes fair use, "labeling it as an affirmative defense … is a misnomer[.]"  See Lenz v. Universal Music Corp., 815 F.3d 1145, 1153-54 (9th Cir. 2016), cert denied, 137 S. Ct. 416 (2016) ("Fair use is … distinct from affirmative defenses where use infringes a copyright.").

An instructive recent Southern District case in point is Lombardo v. Dr. Seuss Enters., L.P., 279 F. Supp. 3d 497 (S.D.N.Y. Sept. 15, 2017).  In Lombardo, Judge Hellerstein dismissed the plaintiffs' copyright infringement claim on the basis of fair use and, in so doing, overruled their objection that fair use should not be resolved on the pleadings before discovery.  Id. at 504-513.[3]  The Court surveyed the law of the Southern District and

_____

[3] Although Lombardo addressed a Rule 12(c) motion for judgment on the pleadings, the Court applied the same standard and analysis applicable under Rule 12(b)(6).  See id. at 505 ("In deciding this motion, all pleadings … are taken to be true, subject to the same plausibility standard that applies on a Rule 12(b)(6) motion.").

concluded that "[n]umerous courts in this district have resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue."  Id. at 504-505.  The Court explained that, "although discovery might yield additional information about [the parties'] intent, such information is unnecessary to resolve the fair use issue; all that is needed is the parties' pleadings, copies of [the original work and the alleged secondary work], and the relevant case law."  Id.

In this case, similarly, the issue of fair use is properly resolved on a 12(b)(6) motion because all that is needed is the Complaint, copies of Plaintiff's Video and the Critical Video, and the the law of the Second Circuit. (Cf. id.)  All are before the Court.  Plaintiff's Complaint and Defendant's motion papers contain the relevant pleadings and case law.  The videos are incorporated by reference into Plaintiff's Complaint. (Compl. ¶¶ 2, 3, 16-23, 28-29, 46-49, 56, 59-60 & Ex. A; Mullen Decl. Exs. A, C (videos); id. Exs. B, D (transcripts of videos).).  The parties agree that both works are properly considered on this motion. (Mullen Decl. Ex. E; id. Ex. F (3/9/18 Hr'g Tr. at 15:10-13 ("THE COURT: … Is there any dispute that the videos themselves are part of the pleadings? … [PLAINTIFF'S COUNSEL:] No, there is not.").) Everything necessary to determine the issue of fair use is properly considered on this motion.  See Goel, 820 F.3d at 559.

The Court has all the tools it needs to conduct the requisite "side-by-side comparison of the works at issue." <u>Lombardo</u>, 279 F. Supp. 3d at 504-05.  Proof in the record abundantly demonstrates fair use.  The issue is properly resolved as a matter of law.

B.   <u>The Critical Video Is Fair Use</u>

Section 107 of the Copyright Act provides that "the fair use of a copyrighted work … for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  The statute prescribes a holistic four-factor test:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include:
>
> (1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)  the nature of the copyrighted work;
>
> (3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4)  the effect of the use upon the potential market for or value of the copyrighted work.

<u>Id.</u>

Although the statute calls for case-by-case analysis, the Second Circuit has observed that "[a]mong the best recognized justifications for copying from another's work is to provide

comment on it or criticism of it." Authors Guild v. Google, Inc. (Google Books), 804 F.3d 202, 215 (2d Cir. 2015). Accordingly, "courts have regularly found fair use after holding that the purpose or character of an allegedly infringing work was criticism and/or comment." Hosseinzadeh v. Klein, No. 16-cv-3081 (KBF), 2017 WL 3668846, 2017 U.S. Dist. LEXIS 134910 at *8 (S.D.N.Y. Aug. 23, 2017).

Here, all four fair use factors – in isolation and considered together – weigh in favor of dismissal.

### 1.   Transformative Purpose

The first factor's inquiry into the "purpose and character" of the secondary use focuses on whether the new work "supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message[,] … in other words, whether and to what extent the new work is transformative." Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013) (alterations in original) (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994)).

The purpose and character of the secondary work is "[t]he heart of the fair use inquiry" (Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006)), given that "the goal of copyright, to promote science and the arts, is generally furthered by the creation of

transformative works." Google Books, 804 F.3d at 214 (quoting Campbell, 510 U.S. at 579) (quotations omitted).

The Second Circuit has held that "'there is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in section 107,' including 'criticism' and 'comment.'" Hosseinzadeh, 276 F. Supp. 3d at 42; see also NXIVM Corp. v. Ross Inst., 364 F.3d 471, 477 (2d Cir. 2004) ("Where the defendants' use is for the purposes of criticism [or] comment … factor one will normally tilt in the defendants' favor") (quotations omitted).

Here, the Complaint pleads that the purpose and character of the Critical Video is criticism and comment.  It alleges that Plaintiff's Video was a "video essay detailing [Plaintiff's] unique viewpoint and sharing footage shot throughout [the] unforgettable night [of Hillary Clinton's 2016 election night party]."  (Compl. ¶ 2.)  Plaintiff's Video "portray[ed] [Plaintiff's] reaction to the Presidential election and her thoughts and commentary on the incoming Presidential administration" via "a 9 minute 50 second audio-visual work entitled, 'We Thought She Would Win.'"  (Id. ¶ 16.)

By contrast, the Complaint affirmatively alleges the transformative criticism and commentary embodied in the Critical Video.  In Plaintiff's own words, the Critical Video was a "one minute and twenty-eight second series of clips" from Plaintiff's

Video, under "a title routinely used by [Defendant] in a demeaning context to belittle proponents of perceived liberal social policies and stances," like Plaintiff. (Id. ¶ 20.) The Complaint pleads that the Critical Video was "an attempt to discredit [Plaintiff] and her political positions," (Compl. ¶ 2), "clearly motivated by and [choosing] to selectively target [Plaintiff] based on her disparate political beliefs," (id. ¶ 42). Plaintiff's purpose was incontestably not to demean or belittle herself, or to mock her own political positions. Infra. n.4.

The Critical Video is patently transformative of Plaintiff's purpose on the basis of the Complaint alone. Plaintiff's allegations are judicial admissions binding throughout the course of this proceeding. Ariel (UK) Ltd. v. Reuters Group, PLC, 277 Fed. Appx. 43, 45 (2d Cir. 2008.) In this extreme case, Plaintiff admits fair use. No comparison of the works is even necessary.

But a comparison of the works further supports fair use, and the Hosseinzadeh case is instructive. In that case, Judge Forrest compared two YouTube videos: defendants' video mocked, parodied, criticized and commented on the other, including through a series of clips of the original. Hosseinzadeh, 2017 U.S. Dist. LEXIS 134910. Evaluating the first factor of the fair use analysis, the Court noted that, "[i]rrespective of whether one finds it necessary, accurate, or well-executed, the [secondary video] is nonetheless criticism and commentary on the [original video]."

Id. at *16.  For that reason, the Court ruled that the first factor of the fair use inquiry weighed in favor of defendants.  Id. at *17; see also Oyewole, 2018 U.S. Dist. LEXIS 39139 at *24 ("the complaint supports the conclusion … that [the alleged infringing works] are transformative" where "[plaintiff] acknowledges that [] Defendants use [the copyrighted material] in contravention of [plaintiff's] original purpose") (internal quotations omitted); Lombardo, 279 F. Supp. 3d at 507 ("Treating parodies as transformative works is logical, for if [the party holding a copyright] could control who was permitted to parody [the copyrighted work] and in what manner, the purpose of copyright law would be stifled, not promoted.")

Comparison of Plaintiff's Video and the Critical Video permits a single conclusion:  that the purpose and character of Sargon's secondary work is transformative.

First, Sargon's title is critical and mocking.  Plaintiff concedes it.  The term "SJW" in "SJW Levels of Awareness" refers in a belittling way to "Social Justice Warriors" who are "proponents of perceived liberal social policies and stances," like the Plaintiff.  (Compl. ⁋ 20.)  Sargon's title, applied to the Critical Work, demeans Hughes as an "SJW" and discredits her "level[] of awareness."  (Id.)

A salient difference between the two works is their duration. That difference is commentative and critical, and it reflects a

creative choice Sargon made while creating the Critical Video.  As the Complaint explains, Plaintiff's Video captures the emotional "roller coaster" of a dramatic and newsworthy evening:  "from the electric energy of anticipation to the crestfallen realization of defeat."  (Compl. ¶ 15.)  In Hughes's original, that progression takes nearly ten minutes.  (Id. ¶ 16.)  In the Critical Video, by contrast, the roller coaster ride takes only 118 seconds.  (Mullen Decl. Ex. C.)  The high and the low are closer together.  The emotional drop is steeper.  Sargon's video editing thus creates excitement – and for an audience not sympathetic to Hughes's views, entertainment – by juxtaposing hope against the wreckage of her smashed political dream.

No less impressively, Sargon exposes Hughes's lack of awareness by splicing together her admission that she "is surrounded by like minded people" with her complaint that "there are two Americas."  (Mullen Decl. Exs. C, D.)  He shows that Plaintiff is among the members of the "divided" society that her commentary claims to demean.  (Id.)  By doing so, Defendant impeaches Plaintiff's political authority, mocks her viewpoint, and transforms Hughes's original work into an effective criticism of itself.

To summarize analysis of the first fair use factor:  the Complaint itself clearly demonstrates that the Critical Video is transformative mockery, criticism, and comment.  As such, it

satisfies factor one of the fair use analysis and is quintessential fair use.  E.g. Lombardo, 279 F. Supp. 3d at 507.  Comparison of the two works cements the conclusion that the Critical Work is a mockery – not an appropriation – of Hughes's work.  The first factor falls decisively in favor of fair use.  Id. ("once a work is determined to be a [transformative] parody, the second, third, and fourth factors are unlikely to militate against a finding of fair use") (citation and quotations omitted).

### 2.   Nature of the Copyrighted Work

The second factor of the fair use analysis considers "the nature of the copyrighted work."  17 U.S.C. § 107.  This prong asks "(1) whether the work is expressive or creative, … with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  Blanch, 467 F.3d at 256.

The Complaint asserts that Hughes attended a political event with press credentials, (Compl. ¶ 15); the content is largely factual and informational, interspersed with commentary, (Id. ¶¶ 2, 15-16), thus weighing in favor of fair use.  That the video was published online for free public consumption also favors fair use.  However, "[t]he second factor has rarely played a significant role in the determination of a fair use dispute."  Google Books, 804 F.3d at 220.

3.   Amount and Substantiality of Use

The third fair use factor focuses on "whether the quantity and value of the materials used[] are reasonable in relation to the purpose of the copying." Blanch, 467 F.3d at 257 (quoting Campbell, 510 U.S. at 586).  "Courts look to the quantity of materials used as well as 'their quality and importance' to the original work" (Oyewole, 2018 U.S. Dist. LEXIS 39139 at *26 (quoting Cariou, 714 F.3d at 710)), and consider whether they are "reasonable in relation to the purported justification." Lombardo, 279 F. Supp. 3d at 511 (quoting McCollum, 839 F.3d at 185).

Under this prong, the Hosseinzadeh Court observed that "to comment on and critique a work, clips of the original may be used." Hosseinzadeh, 2017 U.S. Dist. LEXIS 134910 at *18 (collecting cases).  In that regard, "[w]ithout using actual clips, the commentary and critique [in the secondary video] would lose context and utility." Id.

Here too, the Critical Video's commentary and critique consist of – and require – use of actual clips of Plaintiff's Video.  Compared to the nearly ten-minute length of Plaintiff's Video, the Critical Video's 88 seconds of content is eminently reasonable in "amount and substantiality" in relation to its satirical purpose.  (Compl. ¶¶ 16, 20; Mullen Decl. Exs. A, C.) Factor three favors fair use, and dismissal.

4.   <u>Effect on the Market</u>

The fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.  The concern underlying this factor "is not whether the secondary use suppresses or even destroys the market for the original work … but whether the secondary use usurps the market of the original work." <u>Blanch</u>, 467 F.3d at 258 (quoting <u>NXIVM</u>, 364 F.3d at 481-82).  "[A]n accused infringer has usurped the market for copyrighted works … where the infringer's target audience and the nature of the infringing content is the same as the original." <u>Cariou</u>, 714 F.3d at 709.  In that regard, "[a] fair use must not excessively damage the market for the original by providing the public with a substitute for that original work." <u>Authors Guild, Inc. v. HathiTrust</u>, 755 F.3d 87, 95 (2d Cir. 2014).

Here, it is clear on the face of the Complaint that the Critical Video is not a market substitute for Plaintiff's Video, and does not usurp the market or the target audience of Plaintiff's Video.[4]  To the contrary, the Critical Video has a purpose utterly

---

[4] Counsel affirmed this conclusion at the pre-motion conference. (Mullen Decl. Ex. F (3/9/18 Hr'g Tr. at 12:21-13:6(THE COURT: Well, fair enough.  But are you alleging that the public viewed this as [Sargon] giving inside looks at what was going on on election eve? He was trying to pass this off as his own video of what was happening at the victory party or what was supposed to have been a victory party?  It seems to me you conceded that it's mocking and anybody who goes to his site would understand it to be mocking. Is there some allegation that people were confused and thought he

opposed to that of the original (i.e., to mock its content); the views of the Critical Video's audience are therefore opposed to the views of Hughes's. (Compl. ¶¶ 3, 20, 34, 35, 42.) If anything, as a social media celebrity dependent on views and likes, upvotes and followers, Plaintiff's market has only benefited from the Critical Video in the form of increased exposure.

In conclusion, each of the fair use factors – as well as the totality of the circumstances – supports a finding of fair use. Plaintiff's first claim for copyright infringement fails to state a plausible claim. It should be dismissed with prejudice.

## II.  The Complaint Fails to State a Claim for DMCA Misrepresentation

Plaintiff's second cause of action seeks damages under 17 U.S.C. § 512(f), which provides in relevant part:

> Any person who knowingly materially misrepresents under this section –
>
> (1)  that material or activity is infringing, or
>
> (2)  that material or activity was removed or disabled by mistake or misidentification,
>
> shall be liable for any damages, including costs and attorneys' fees, incurred by … any copyright owner … who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed

---

was taking credit for [Plaintiff's] work?  MS. GRANT: No, there isn't, your Honor.  THE COURT: Okay.").)

> to be infringing, or in replacing the
> removed material or ceasing to disable
> access to it.

Liability under the plain language of Section 512(f) requires, at a minimum, (1) a knowing, material misrepresentation; (2) reliance by a service provider upon such misrepresentation; and (3) damages.

Here, Plaintiff's claim fails to plead at least two elements of a violation. First, the Complaint does not allege that YouTube relied on Defendant's purported misrepresentations. Second, the Complaint fails plausibly to plead an actionable misrepresentation.

> A.  YouTube Did Not Rely on Any
>     Purported Misrepresentation

According to the Complaint, YouTube disabled access to the Critical Video at Plaintiff's request.  (Compl. ¶ 25.) Defendant challenged the takedown by submitting a counter-notice to YouTube.  (Id. ¶ 30.)  In that counter-notice, Defendant asserted that his Critical Video is "entirely transformative" and "intended for parody."  (Id. ¶ 58.)  Plaintiff contends that those statements were knowing and material misrepresentations. (Id.)

However, the Complaint does not allege that YouTube restored Defendant's video or relied on the statement's in

Defendant's counter-notice.  Indeed, Plaintiff's censorious copyright strike was and remains effective:  the Critical Video was inaccessible to the viewing public on the date of the Complaint, and remains inaccessible as of the date of this motion.

Liability under Section 512(f) requires that a plaintiff be injured by a service provider's reliance on a misrepresentation. The Complaint pleads no such reliance.  The Section 512(f) claim therefore fails.

B.    The Complaint Fails to Plead
      An Actionable Misrepresentation

Even if the service provider had acted on Defendant's counter-notice, Plaintiff's second cause of action fails because the statements are non-actionable as a matter of law.

Liability under Section 512(f) requires that a defendant "have actual knowledge that it is making a misrepresentation of fact."  Here, the purported misrepresentations are Defendant's representations that his work is "entirely transformative" and "intended for parody."  Such statements are substantially true, see supra., and they are also non-actionable statements of opinion.  Hosseinzadeh, U.S. Dist. LEXIS 134910 at *20-21.

In addition, the issuer of a DMCA notice is only liable under Section 512(f) if he lacks a "subjective good faith belief" that his statement is true.  See Lenz v. Universal Music

Corp., 815 F.3d 1145, 1153-54 (9th Cir. 2016), cert denied, 137 S. Ct. 416 (2016) (applying subjective good faith standard to issuers of takedown notices under Section 512(f).)  The Complaint fails plausibly to plead that Sargon lacked subjective good faith in the truthfulness of his statements.  Quite to the contrary, it pleads that Defendant's counter-notification issued only after an evaluation of of relevant facts and law, and after Defendant reached the informed (and correct) good faith belief that his commentative secondary work was noninfringing.

The Complaint alleges that Defendant is "well aware of … copyright law … and the boundaries of fair use."  (Compl. ¶ 41.) Taken together with the Complaint's own admission that Defendant's work is demeaning, (id. ¶ 20), belittling, (id.), critc[al of] viewpoints on various social and political issues," (id. ¶ 34), and "based on [Plaintiff's] disparate political beliefs," (id. ¶ 42), Defendant's claims of non-infringement are nonactionable as a matter of law.  E.g., Lenz, 815 F.3d at 1153-54; Hosseinzadeh, U.S. Dist. LEXIS 134910 at *20-21. Plaintiff's own allegations leave it utterly implausible that Defendant lacked subjective good faith.

## CONCLUSION

Sargon's criticism of Plaintiff is quintessential fair use. The parties are celebrity speakers in a modern, digital town square.  Savage mockery of political opponents is a time-honored tradition in American public discourse.

The exchange of ideas, in the form of commentary and criticism of another's expressions, is protected speech under the First Amendment.  It is protected use under the Copyright Act.  17 U.S.C. § 107.  Hurt feelings do not give rise to a cause of action.

For the foregoing reasons and those contained in the moving papers submitted herewith, Defendant Benjamin respectfully requests that the Court enter an order dismissing the Complaint in its entirety and with prejudice pursuant to Federal Rule 12(b)(6); and grant Benjamin such other and further relief as the Court deems just and proper.

DATED:      April 20, 2018
            New York, New York

                        MULLEN P.C.

                        _____
                        Wesley M. Mullen (WM1212)
                        Mullen P.C.
                        200 Park Avenue, Suite 1700
                        New York, NY 10166
                        (646) 632-3718
                        wmullen@mullenpc.com

                        *Counsel for Defendant*
                        *Carl Benjamin*
                        *a/k/a Sargon of Akkad*