# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AKILAH HUGHES,

Plaintiff,

v. 17 CV 6493 (RJS)

CARL BENJAMIN, a/k/a Sargon of Akkad, et al.,

Defendants.

------------------------------x

New York, N.Y.
March 9, 2018
11:35 a.m.

Before:

HON. RICHARD J. SULLIVAN,

District Judge

APPEARANCES

KRISTIN A. GRANT
Attorney for Plaintiff

WESLEY M. MULLEN
Attorney for Defendant Carl Benjamin

(Case called)

THE COURT: Let me take appearances. For the plaintiff?

MS. GRANT: Kristen Grant, for plaintiff Akilah Hughes.

THE COURT: Okay, Ms. Grant. Good morning.

MS. GRANT: Good morning.

THE COURT: And for the defendant?

MR. MULLEN: Wes Mullen, Mullen PC, for the defendant Carl Benjamin. Good morning, your Honor.

THE COURT: Okay. Good morning.

MR. MULLEN: Good morning.

THE COURT: This is a premotion conference on the defendant's contemplated motion to dismiss. I have letters from the parties, and I have reviewed them and done my own research. The purpose of a premotion conference is that I require these because I think they're helpful. I don't do it to make it harder to make a motion or to create work for lawyers. I just think that it gives me the ability to provide some insights or impressions early, before you've dedicated yourselves to 25 pages' worth of briefing, and I think that can be valuable. I never tell a party they can't make a motion, but do I sometimes say what I think of a motion or at least give you a preview of what my initial thinking is on the merits of a motion.

So, here we've got a contemplated motion that makes a number of arguments - jurisdictional and substantive. Let's start with the subject matter jurisdiction argument. Okay?

Basically, I think the lack of subject matter jurisdiction argument turns on the extraterritorial application of the statute in this case, right? That's what you're saying, Mr. Mullen?

MR. MULLEN: That's right.

THE COURT: You're saying, because your client was in London or in the U.K. at the time that he did these things, that he is sort of beyond the reach of this Court, there's no subject matter jurisdiction.

Now, I think that's kind of an interesting question, as to whether that's a subject matter jurisdiction problem or whether it's an element, whether extraterritoriality is really an element as opposed to a jurisdictional point. I think there's some interesting case law in this circuit and in this district in which courts have concluded that it's really nonjurisdictional in character, that the extraterritorial limitation under the Copyright Act is about whether this is something you have to plead and ultimately have to demonstrate, but there's no indication that Congress intended extraterritorial limitations on the scope of the Copyright Act to limit the subject matter jurisdiction of the federal courts. That's from the Federal Circuit. Litecubes LLC versus Northern

Light Products, Inc. Other courts in this district, including Judge Wood, in International Diamond Importers, Inc. versus Med Art, Inc. and Judge Preska in Roberts versus Keith sort of reach the same conclusion. Others, not so sure. I think that the analysis ultimately goes the same way as to whether or not this is extraterritorial conduct, that it doesn't have application under the Copyright Act.

Candidly, I think the Court has subject matter jurisdiction or I think that the conduct here is felt within the United States in such a way as to make this an act within the United States. It seems to me that plaintiff has pleaded, and could show, that the defendant's foreign conduct, at the very least, affected plaintiff in the United States, and that the acts of first downloading, then uploading, and then reproducing the work constitute acts within the United States.

So I think I am likely to find subject matter jurisdiction or that this is not an extraterritorial application of the Copyright Act. But if anybody wants to be heard on that, those are my initial thoughts.

Mr. Mullen?

MR. MULLEN: Judge, I won't address whether this is a jurisdictional or a merits argument. I think the basis for the motion would be the same whether it's under 12(b)(1) or 12(b)(6). What I will say is that the facts as alleged here are that my client, Mr. Benjamin, who lives and works in the

U.K., downloaded a video that was posted on YouTube by someone in the United States --

THE COURT: Right.

MR. MULLEN: -- edited it, uploaded it in the U.K., and that the plaintiff was harmed in the U.S.

THE COURT: And it was available to people in the U.S. and in the U.K. and all over the place?

MR. MULLEN: And all around the world.

THE COURT: Right.

MR. MULLEN: But there's no allegation in the complaint about whether the computer systems or the databases that hosted the defendant's video were in the U.K. or the U.S. or anywhere else. The allegation is that YouTube and Twitter are U.S. companies and, therefore, the conduct of the defendant is, I guess, felt in the U.S. or therefore within the territoriality of the U.S. Copyright Act.

My client would argue that he lives and works in the U.K., he's subject to the copyright law of the U.K., and, I suppose, the European Union, to the extent that still applies in London, and that he ought not be required to think about copyright law of the U.S. or anywhere else in the world where they might view the videos that he uploads, because he's simply not subject to that law.

THE COURT: Okay. Well, I'm not saying it's a frivolous argument, and it's one you may want to brief, but I

think it's one that I'm not likely to grant for reasons I'll get into more. But it does seem to me that this is conduct that is arguably taking place here because the initial material was on U.S. servers, right? That's what's alleged in the complaint, that Ms. Hughes' materials were downloaded or uploaded -- I always get them mixed up -- onto YouTube here in the United States, right?

MR. MULLEN: That, I believe, is the allegation. Ms. Grant will correct me if I am wrong.

MS. GRANT: That's correct.

MR. MULLEN: But if that's the case, then anyone anywhere in the world who views a video posted by a U.S. video creator is subject to the U.S. copyright law, which seems to me to destroy the notion --

THE COURT: It's not just viewing it. It's when you take it, do something with it, and then repost and make it available back in the U.S., I think it's all those things. It's a totality-of-the-circumstances analysis, so it does require fact-specific and case-specific inquiry, which is why this might actually require some discovery, it would seem to me, but I think this is probably enough.

I think the more interesting question, in some ways, is the personal jurisdiction question. So there are several theories as to whether there is personal jurisdiction over Mr. Benjamin, one of which is that he consented to personal

jurisdiction in New York by virtue of the agreement or the user agreement that he executes with YouTube. But I think it seems to me that agreement, that language, and the cases that are cited relate to really the jurisdiction of the Northern District of California. It doesn't seem to me that it would turn on every place where YouTube has an office or a couple of people with desks and fax machines, that that's consent to be sued in any of those locations. So, I don't think that's one that is likely to be a winner for the plaintiff. In other words, I think that that's not sufficient basis for personal jurisdiction.

I think the closer analysis is really whether or not the site of the injury is New York. And that turns really on a number of cases, I think, starting with Penguin Group USA, Inc. versus American Buddha, which is a Judge Lynch case from a long time ago, as it turns out, nine years ago, but a lot changes in nine years -- Judge Lynch is no longer on the district court -- but that's, I think, the place to begin here. That's a case where the Second Circuit certified a question to the Court of Appeals, the New York State Court of Appeals, about the situs of injury in copyright infringement cases for purposes of determining long-arm jurisdiction here in New York.

Judge Oetken had another case involving sort of the post-Penguin world, which was interesting Pablo Star Ltd. versus Welsh Government, 170 F.Supp.3d 597, 2016, so that's

pretty recent. And then Judge McMahon also had a case Verragio Ltd. versus Malakan Diamond Company, which I have a Lexis site for: 2016 U.S. District Court Lexis 150689, also a 2016 case.

So I think there is some interesting case law going around. Judge Buchwald sort of went the other way on this, in a case called Freeplay Music LLC versus Dave Arbogast Buick-GMC, Inc., finding that in that case somebody who downloaded copyrighted songs, used them in commercials for his car dealership in Ohio and then uploaded them to YouTube against a rightsholder who was in New York, Judge Buchwald concluded that the site of the injury was Ohio, not New York; therefore, the Court lacked personal jurisdiction over the defendant. Frankly, I find Judge Buchwald's reasoning less persuasive than what I thought of Judge Oetken's decision, but it's an interesting question.

So, I think this one probably would be worth briefing and might be an interesting issue, but I think, at least right now, I would be inclined to find that there is personal jurisdiction as well. So I'm happy to hear anybody on that, but I think that one is probably going to require a little more analysis.

No? Okay.

MR. MULLEN: No, thank you, your Honor.

THE COURT: Then getting to the 12(b)(6) motion: Even if there is subject matter jurisdiction, even if there is

personal jurisdiction, Mr. Mullen, you're arguing that the complaint fails to allege facts that would support a plausible claim of copyright violation, infringement, because of fair use, right?

MR. MULLEN: I may be arguing that the complaint alleges too many facts to support a claim of copyright infringement.

THE COURT: Well, I don't know one way or the other, but the point is, I think what you're saying, this is fair use; and fair use is usually, when it's an affirmative defense, it's usually not resolved on the pleadings, it's usually something that happens on summary judgment or after trial but it's not typically on the pleadings. But I think your point is that this complaint basically pleads key facts that would allow the Court to make the fair use determination now. And I think, first of all, you're suggesting that they've incorporated through the complaint both of the videos, the original video and your client's shorter composite video.

MR. MULLEN: Correct.

THE COURT: They've also pled what is the commentary, which is just the sort of a title, right? Your client does a post or a title? Or he calls his thing -- I'm trying to remember what it is. It's in the complaint.

MR. MULLEN: SJ --

THE COURT: SJW.

MR. MULLEN: Levels of Awareness.

THE COURT: Levels of awareness, right? That's all the commentary that there is. There's nothing else? There's no voiceover or anything else?

MR. MULLEN: The editing of the video itself --

THE COURT: The editing itself, but there's no other context added other than the "SJW Levels of Awareness."

MR. MULLEN: Correct. As I understand it, every second of video footage is part of what was originally posted by the plaintiff here.

THE COURT: Okay. It seems that the complaint concedes or acknowledges that -- I'm not really sure what that means, "SJW Levels of Awareness," but it seems that the complaint takes that as kind of a snarky, critical comment. Is that fair? Ms. Grant? This is really for Ms. Grant because it's her complaint. Are you conceding that it's criticism?

MS. GRANT: I mean, it could mean anything, SJW Levels of Awareness. It's some type of comment but I don't think it's sufficient to rise to the level of fair use.

THE COURT: Well, if it is criticism of Ms. Hughes, if it is mocking her, with her own work and a title -- she's the social justice warrior, I presume, in the view of Mr. Benjamin or Sargon of Akkad -- and this is belittling her by reference to a portion of her work, that would seem to me to be kind of quintessential fair use, right? That's what John Oliver and

Jon Stewart and all those folks, Samantha Bee -- they do that every night, they take clips and then they mock them.

This is a case that's not even mocking the person. I haven't seen the clip, so I can't really say. It appears to me the person really being mocked is Ms. Hughes, not the people who are on the video necessarily. But if that's the case, why would that not be fair use, Ms. Grant?

MS. GRANT: We don't believe that merely making one comment on a video, which you have taken wholeheartedly and reposted is sufficient to rise to the level of fair use?

THE COURT: So how much do you need? I'm just thinking about Jon Stewart. I went to college with Jon Stewart. We weren't chummy, but anyway. He was a master, really, but he'd show a clip and sometimes he wouldn't use any words at all; he would just go...and make a face like he was horrified, shocked or appalled, and then he might just move on completely, so not even words and yet, clearly, unmistakably criticizing the person on the clip or, in some cases, perhaps the person who made the clip. So, I'm not sure there's a certain number of words required to make it fair use or to make it commentary that would subject it to the fair use doctrine.

So, the only reason I'm a little bit hesitant is that it's not clear to me exactly what "SJW Levels of Awareness" means. And I imagine that would be spelled out, I suppose, with a little bit of extra discovery but it's not really clear

to me that it's really disputed, because in the complaint, in describing Mr. Benjamin, it basically says that he is a person who frequently mocks progressive individuals and causes, right. Where is it? I had it somewhere.

Oh, help me here, Ms. Grant. It's your complaint.

MS. GRANT: Sure. Paragraph 19 or 20.

THE COURT: What paragraph?

MS. GRANT: 20, I believe.

THE COURT: The bit where it says, "The SJW designation in the title is an abbreviation for 'Social Justice Warrior,' a title routinely used by Benjamin in a demeaning context to belittle proponents of perceived liberal social policies and stances." It's not exactly clear to me what "SJW Levels of Awareness" means but you seem to be conceding that it is demeaning, belittling and mocking, right?

MS. GRANT: That is the plaintiff's belief. However, for fair use to be applicable, it's based on what the public views it as. If the public views it as commentary, not necessarily, if the plaintiff feels that they're being criticized.

THE COURT: Well, fair enough. But are you alleging that the public viewed this as Sargon of Akkad giving inside looks at what was going on on election eve? He was trying to pass this off as his own video of what was happening at the victory party or what was supposed to have been a victory

party? It seems to me you concede that it's mocking and anybody who goes to his site would understand it to be mocking. Is there some allegation that people were confused and thought that he was taking credit for Ms. Hughes' work?

MS. GRANT: No, there isn't, your Honor.

THE COURT: Okay.

Look, it seems to me that whether this case is decided in a motion to dismiss or on summary judgment, this is likely to be fair use. It seems to me that that kind of mocking and social commentary and belittling and demeaning discourse is what's allowed and celebrated, and people make a living doing it, and so it seems to me that this is likely to be a fair use.

So, I think the only question is whether that's going to be something that can be decided on a motion to dismiss or whether it would have to wait until summary judgment.

The second cause of action, on the other hand, I think can easily be dismissed. The statute that your claim is being made under relates to misrepresentations and provides any person who knowingly materially misrepresents under this section that material or activity was removed or disabled by mistake or misidentification shall be liable for any damages incurred by the alleged infringer, by any copyright owner or licensee or by a service provider who is injured by such misrepresentation as the result of the service provider relying upon such misrepresentation in replacing the removed material

or ceasing to disable access to it.

As pleaded in the complaint, you're not saying that YouTube relied on the misrepresentation, you're saying he made a misrepresentation to YouTube, saying this is fair use. But I don't think you're alleging that YouTube ever allowed him to put his material back up. So, it seems to me that YouTube did not rely on the misrepresentation in replacing the removed material.

Is that correct? Or am I --

MS. GRANT: That is correct.

THE COURT: So, it seems to me, absent that kind of reliance, I don't see how you can bring a cause of action for misrepresentation under the Copyright Act. So, I'm happy to hear you on that, but it seems to me that that one, on the face of the pleadings, is not going to prevail.

I don't think, Mr. Mullen, you made that argument, but it seems to me the plain language of the statute makes it very clear, and on the face of the complaint there is no allegation that YouTube was misled into reposting Mr. Benjamin's stuff.

MR. MULLEN: You're right, your Honor, I did not make that argument but you are very persuasive.

THE COURT: Well, it's not my job to persuade, and the whole purpose of these conferences is really just to kick the tires and discuss this a bit. It's not a full-blown oral argument but it is an opportunity to talk about the issue and

to educate me since I will ultimately be the one deciding the motion. But it does seem to me that the misrepresentation is almost certain to be dismissed. I think the closer call is whether or not the infringement, which is the main cause of action, is a fair use and whether that's something that can be decided on a motion to dismiss, but I think it may well be, given what's in the complaint, and, at the very least, it wouldn't be that hard to probably convert this to a motion for summary judgment.

Is there any dispute that the videos themselves are part of the pleadings and are things that the Court can review in deciding this motion? Ms. Grant?

MS. GRANT: No, there is not.

THE COURT: No? Okay.

So, for me, I think the only close question is whether or not "SJW Levels of Awareness" is mockery or commentary that would make it fair use or whether it's open to interpretation that would suggest something else; and then I guess the point Ms. Grant makes, which is whether the public is confused by this. But I don't think -- have you alleged that the public was confused?

MS. GRANT: Not in the initial complaint, your Honor.

THE COURT: No. So, I don't know, I think it's unlikely that that is going to be a cause of action that prevails either. It's just a matter of when, I think,

probably. But maybe I'm wrong; you'll set me straight with further briefing.

So, what do you folks want to do? Do you want to make this motion, I assume, or do you have want to go straight to discovery, do a deposition or two, and then make a motion for summary judgment?

MR. MULLEN: Well, Judge, first I'd like to speak with my client but I expect he will want to proceed with the motion to dismiss.

THE COURT: Okay. So how long do you think you'll need to brief it, now that you have all that guidance from me as to what are the fault-line issues?

MR. MULLEN: I'd request four weeks.

THE COURT: Four weeks? Today is what, the 9th? So that's April 6th?

MR. MULLEN: That's right.

THE COURT: Okay, all right.

And then how long do you think you would need to respond, Ms. Grant?

MS. GRANT: Two weeks from then.

THE COURT: Two weeks? That's all?

MS. GRANT: Three?

THE COURT: Okay, I'll give you three, sure. You have had a preview; you know what's here.

MS. GRANT: Yes. Just in case.

THE COURT: I'd give you four weeks if you wanted four, but if you wanted less --

MS. GRANT: Let's do the four if that's okay.

THE COURT: Okay.

Four weeks from the 6th is what? It's like May 2nd or something?

MR. MULLEN: The 4th.

THE COURT: The 4th? Okay.

So May 4th. And then a reply, if any, I usually would give about ten days. Is that doable?

MS. GRANT: Yes, your Honor.

MR. MULLEN: I would just ask for 12 days because it's the day before is Mother's Day.

THE COURT: Okay.

MR. MULLEN: The 16th.

THE COURT: That's touching, it's hard for me to -- so the 16th, all right. If I need further oral argument, I'll let you know that, but otherwise I'll resolve it on the papers.

In the meantime, I'm going to stay discovery. I don't think there's really much point. The papers, I guess, will then include the videos themselves, right? That's --

MR. MULLEN: That's right, Judge. We will work out how to submit those to the Court.

THE COURT: Yes. That's something you'll probably have to check with the clerk's office, as to how to file videos

as part --

MR. MULLEN: Do you have a preference?

THE COURT: I don't have a preference really. Generally, we would want to make it available to people who are -- well, is this stuff still on YouTube?

MS. GRANT: My client's video is still posted.

MR. MULLEN: Mine is not, so we'll have to submit them on a disk or other medium.

THE COURT: So, talk to the clerk's office about how they want you to do it. I also ask for courtesy copies. If you send me a disk, that's fine. But check with the clerk's office about how it ought to be publicly docketed.

MR. MULLEN: Thank you, your Honor.

THE COURT: Is there any prospect of resolving this, now that you have sort of a window into my thinking, before you dedicate a lot of time and money and energy into briefing? Is it worth having a sit-down with a mediator or magistrate judge or something? Thoughts?

MS. GRANT: We're still happy to discuss settlement.

THE COURT: Okay.

And Mr. Mullen?

MR. MULLEN: The defendant is as well. We've requested a demand, and I think that would be a good starting point.

THE COURT: Okay.

I guess I'm going to stay discovery. If you guys want to talk settlement, you're free to do that, but, otherwise, this will be the briefing schedule. If at some point you're close and you think let's stop the presses because that gets expensive, if we're going to settle, then let me know. Okay?

MS. GRANT: Yes, your Honor.

THE COURT: But, otherwise, this will be the schedule. I'll docket it later today so that it's online, but it's April 6th for you, Mr. Mullen; May 4th for you, Ms. Grant; and May 16th for the reply.

So, it's interesting, I think it's an interesting case, involving interesting issues, but we'll see where we go.

Anything else before we break for the day?

MS. GRANT: No, I think that's it.

MR. MULLEN: No, your Honor.

THE COURT: All right.

So, let me thank the court reporter. If anybody needs a copy of the transcript of this proceeding, you can take that up with the court reporter, either now or later through the website. And I guess I'll see you when I see you. Okay?

Thanks. Have a nice weekend.

MR. MULLEN: Thank you, Judge.

* * *