**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AKILAH HUGHES,

Plaintiff

v.

CARL BENJAMIN,
a/k/a Sargon of Akkad, et al.,

Defendants.

17 CV 6493 (RJS)

**REPLY IN SUPPORT OF**
**SARGON OF AKKAD'S MOTION TO DISMISS**

Wesley M. Mullen (WM1212)
MULLEN P.C.
200 Park Avenue | Suite 1700
New York, NY 10166
(646) 632-3718
wmullen@mullenpc.com

*Counsel for Defendant*

**TABLE OF CONTENTS**

– * –

**PRELIMINARY STATEMENT**..........1

**ARGUMENT**..........1

**I. Fair Use Is Properly Decided on This Motion to Dismiss**..........1

**II. The Critical Video is Fair Use**..........2

A. Plaintiff Admits That the Critical Video is Transformative..........2

1. Since the Parties Agree, The View of a "Reasonable Observer" Is Irrelevant..........5

2. The Critical Video is Obvious Political Mockery and Satire..........6

B. The Other Three Factors Favor Fair Use..........8

**III. The DMCA Claim Also Fails**..........10

**IV. Dismissal with Prejudice is Warranted**..........10

**TABLE OF AUTHORITIES**

Cases

Abilene Music, Inc. v. Sony Entm't, Inc.,
320 F. Supp. 2d 84 (S.D.N.Y. 2003) ........................ 7, 10

Adjmi v. DLT Entertainment Ltd.,
97 F. Supp. 3d 512 (S.D.N.Y. 2015) ...................... 1, 8, 9

Ariel (UK) Ltd. v. Reuters Group, PLC,
277 F. App'x 43 (2d Cir. 2008) ................................. 3

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ............................. 4

Authors Guild v. Google, Inc.,
804 F.3d 202 (2d Cir. 2015) ..................................... 9

Campbell v. Acuff-Rose Music, Inc.,
510 U.S. 569 (1994) ...................................... passim

Cariou v. Prince,
714 F.3d 694 (2d Cir. 2013) ............................. 5, 6, 8

Fisher v. Dees,
794 F.2d 432 (9th Cir. 1986) .................................. 9

Folsom v. Marsh, 9 F. Cas. 342
(C.C.D. Mass. 1841) (No. 4901) ................................ 7

Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.,
440 F.3d 571 (2d Cir. 2006) ..................................... 3

Hutchison v. Deutsche Bank Sec. Inc.,
647 F.3d 479 (2d Cir. 2011) .................................... 10

Oyewole v. Ora,
291 F. Supp. 3d 422 (S.D.N.Y. 2018) ........................... 1

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,
602 F.3d 57 (2d Cir. 2010) ...................................... 4

TCA Television Corp. v. McCollum,
839 F.3d 168 (2d Cir. 2016) ..................................... 1

Statutes and Rules

17 U.S.C. § 107 .......................................................... 2

Fed. R. Civ. P. 15(a)(2) .................................................. 10

Other Materials

Jonathan Band, Fair Use: The Foundation of Jon Stewart's Success, TECHDIRT (Feb. 13, 2015), https://tinyurl.com/y72f6ufo ....................................... 7

Pierre N. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990) ................................ 7, 9

Defendant respectfully submits this reply memorandum of law in support of his motion to dismiss the Complaint.

**PRELIMINARY STATEMENT**

Plaintiff and Defendant agree that fair use can be decided on this motion to dismiss. They agree that both videos are part of the motion record. And Plaintiff and Defendant agree that the purpose of the Critical Video is to mock and ridicule Plaintiff.

Yet the Opposition[1] asks the Court to ignore transformative use that even Plaintiff perceives in the Critical Video. It seeks to defer the fair use determination to another day.

This case should be decided now. Defendant's work is obvious political criticism that Plaintiff finds unpleasant. Its purpose is undisputedly different from the purpose of Plaintiff's Video, and the remaining fair use factors favor dismissal.

**ARGUMENT**

**I. Fair Use Is Properly Decided on This Motion to Dismiss**

Fair use is properly decided on a motion to dismiss when the defense is clearly established on the face of a complaint. TCA Television Corp. v. McCollum, 839 F.3d 168, 178 (2d Cir. 2016). Plaintiff agrees. (Opp. at 5 ("fair use may be decided on a motion to dismiss … .").) Recent decisions in this District illustrate the rule. E.g., Oyewole v. Ora, 291 F. Supp. 3d 422, 432-36

1 (ECF Doc. No. 35 ("Opp.").)

(S.D.N.Y. 2018) (granting motion to dismiss based on fair use); Adjmi v. DLT Entm't Ltd., 97 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) ("Courts in this Circuit have resolved motions to dismiss on fair use grounds … .").

The Opposition claims that the Complaint does not clearly establish fair use. (Opp. at 5.) But a clearer case than this one is hard to imagine. The Complaint pleads facts that conclusively establish the transformative purpose and character of Sargon's work, and Plaintiff admits that the Critical Video mocks and demeans her. (Infra at 3-4.) On the remaining fair use factors, the Opposition erroneously argues that the Copyright Act grants Plaintiff a monopoly over ideas, and allows her to censor political critics. (Infra at 8-9.) The case should be dismissed on the pleadings.

## II. The Critical Video is Fair Use

All four fair use factors favor dismissal. 17 U.S.C. § 107.

### A. Plaintiff Admits that the Critical Video Is Transformative

The Complaint pleads that the purpose and character of the Critical Video is transformative. It admits that Sargon's title, "SJW Levels of Awareness", refers in a demeaning way to Plaintiff and her political viewpoint. (Compl. ¶ 20; see Mot.[2] at 2, 14-15.)

[2] Memorandum of Law in Support of Sargon's Motion to Dismiss the Complaint (ECF Doc. No. 31 ("Mot.")).

It also pleads that the purpose of the Critical Video is to "discredit [Plaintiff] and her political positions." (Compl. ¶ 3.) The Opposition reaffirms that Sargon's video mocks and demeans Plaintiff. (Opp. at 9 ("Plaintiff is aware of [the] meaning [of the title of the Critical Video] as stated in the Complaint … .").) And it fails to dispute that, in her Complaint, "Plaintiff admits that the [Critical Video] provides criticism and commentary … " on Plaintiff's Video. (See Opp. at 7.)

The Opposition tries to recant these admissions in a bid to rescue Plaintiff's copyright claim. The attempt is futile for at least three reasons.

First, facts averred in the Complaint are judicial admissions. Ariel (UK) Ltd. v. Reuters Group, PLC, 277 F. App'x. 43, 45 (2d Cir. 2008); Gibbs ex rel. Estate of Gibbs v. CIGNA Corp., 440 F.3d 571, 578 (2d Cir. 2006) (finding error where district court disregarded judicial admissions in pleading). They are conclusively established, and they bind Plaintiff throughout the case. Ariel, 277 F. App'x at 45. Plaintiff is stuck with her pleading, and with the conclusion that naturally follows: the Critical Work is transformative. The Court need look no further than the Complaint to determine factor one.

Second, having pleaded fatal facts, Plaintiff cannot hide behind contrary conclusions. For instance, the Complaint and the Opposition aver that the Critical Video "provides no … commentary

or criticism" and "no original content." (Compl. ⁋ 21; Opp. at 4.) But that conclusion is incompatible with Plaintiff's factual admission that the Critical Video mocks and demeans her. The "naked assertion" that Sargon's work is not commentative or critical is a "conclusion[] … not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

Third, "[i]n copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (citations and quotations omitted). Here, because the critical purpose and character of the Critical Video are undisputed, the Court need not engage in its own review. But if it did, comparison would lay clear that the Critical Video exposes and mocks (what Sargon sees as) hypocrisy in Plaintiff's politics.[3]

The Court must accept Plaintiff's factual allegations as true. They resolve the first fair use factor for Defendant.

[3] The Parties agree that in deciding this motion, the Court can compare the two works side by side. (Opp. at 4 n.1.) Plaintiff's Video and the Critical Video are part of the motion record. (Declaration of Wesley Mullen (ECF Doc. No. 32 ("Mullen Decl.") at Exs. A, C.)

### 1. Since the Parties Agree, The View of a "Reasonable Observer" Is Irrelevant

Even though Plaintiff admits that the Critical Video is criticism and commentary, the Opposition argues that the Court must determine how it would appear to "the reasonable observer." (Opp. at 7.) For this Plaintiff relies on Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994) and Cariou v. Prince, 714 F.3d 694 (2d Cir. 2013). Plaintiff misconstrues the precedents.

Campbell laid down that, in assessing whether a work is transformative, courts should determine whether a defendant's use "reasonably could be perceived as commenting on the original or criticizing it, to some degree." 510 U.S. at 583. "Ridicule" is one of the "types of comment and criticism that traditionally ha[s] had a claim to fair use protection as transformative works." Id. The Critical Video passes the test.

Cariou instructs courts in the Second Circuit not to take at face value what a defendant says about the purpose and character of their alleged infringing works. 714 F.3d at 707 ("What is critical is how the work … appears to the reasonable observer not simply what [a defendant] might say … ."). In Cariou, the Second Circuit found fair use even though the defendant artist testified that he was not "trying to create anything with a new meaning or a new message." Id. A defendant artist's failure to "explain and

defend his use as transformative" is "not dispositive." Id. Cariou thus grants an extra measure of protection to fair use.

Cariou does not – as Plaintiff suggests – forbid courts from believing a plaintiff when she admits that a work mocks and ridicules her. In most cases, plaintiff will claim that a secondary work is not critical or commentative; the author of the secondary work will disagree. Not here. Both parties agree that the work is transformative. How it might appear to a hypothetical "reasonable observer" is therefore beside the point.

Finally, the Opposition argues that fair use cannot be resolved because "in watching Defendant's video it is not blatantly clear" that "the purpose of [Sargon's] use is satire." (Opp. at 8 (emphasis added).) Even if that were true, the Supreme Court instructs that fair use protections "do not apply only to those who speak clearly, whose jokes are funny, and whose parodies succeed." Campbell, 510 U.S. at 583 (quotations and citations omitted). The Court should take Plaintiff at her word, and find for Sargon on the first factor.

2. The Critical Video is Obvious Political Mockery and Satire

Transformative use is not only "reasonably perceived," but unmistakeable. Sargon titled the Critical Video "SJW Levels of Awareness" to demean Plaintiff as a Social Justice Warrior and to discredit her "level[] of awareness." (Mot. at 16.) By artful

editing, Sargon raised the emotional stakes of Plaintiff's message, creating entertainment out of Plaintiff's political woe. (Id. at 16-17.) The Critical Video also turns Plaintiff's words against her, exposing a political echo chamber. (Id. at 2, 17.)

The Opposition contends, wrongly, that Sargon simply "published [Plaintiff's Video] with a different title." It cites no authority for the proposition that a critical title, or brief but savage comment, falls short of transformative. Cf. Jonathan Band, Fair Use: The Foundation of Jon Stewart's Success, TECHDIRT (Feb. 13, 2015), https://tinyurl.com/y72f6ufo. The Opposition stops short of arguing that Sargon added too little, because the fair use analysis avoids quantitative measurements in favor of qualitative ones. Abilene Music, Inc. v. Sony Entm't, Inc., 320 F. Supp. 2d 84, 91 (S.D.N.Y. 2003).

The opposition also labels the Critical Video a "mere abridgement," playing down its obvious commentary. (Opp. at 1, 7.) The Critical Video is not an abridgement: it does more than simply shorten and supplant. See Pierre N. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105, 1112 (1990). Even under the ancient case cited in the Opposition, "no one can doubt that a reviewer may fairly cite largely from the original work, if his design be … criticism." Folsom v. Marsh, 9 F. Cas. 342, 344 (C.C.D. Mass. 1841) (No. 4901) (Story, J.).

Side-by-side comparison of the two works is unnecessary in this case – but it makes clear the transformative purpose and character acknowledged by both parties.

B. The Remaining Factors Favor Fair Use

On factor two, the Opposition concedes that Plaintiff's work is factual and informational because it contains footage of a political event. (Opp. at 10.) It is also undisputedly published. The character of the work favors Defendant.

So too for factor three, the amount and substantiality of use. The Opposition asks the Court to disregard the brevity of Sargon's work because he used the "heart" of Plaintiff's Video. (Id.) But Plaintiff's political commentary is critical to Sargon's attack on her politics. Defendant's minimal use of that portion is therefore not only reasonable, but necessary, in the context of Sargon's critical and satirical purpose. E.g., Adjmi, 97 F. Supp. 3d at 533 (evaluating whether use is "reasonable in relation to the purpose of the copying") (citing Campbell, 510 U.S. at 586).

Factor four asks whether the secondary use has "usurped the market" for the original. See Cariou, 714 F.3d at 709 ("[A]n accused infringer has usurped the market for copyrighted works … where the infringer's target audience and the nature of the infringing content is the same as the original."). The Critical Video has not. Sargon's target audience is viewers who enjoy

mockery of Plaintiff; Sargon's purpose is to ridicule, not to substitute for, Plaintiff's work.

The Opposition does not dispute these points. (See Opp. at 11.) Instead it argues that Sargon has "impinged on Plaintiff['s] exclusive rights to create derivative works." (Opp. at 11.) This is wrong because Plaintiff does not have a monopoly on derivative works: fair use is a statutory guarantee of "breathing space" for criticism, comment, and other societally beneficial activity. Authors Guild v. Google, Inc., 804 F.3d 202, 214 (2d Cir. 2015).

Just like the Complaint, the Opposition espouses an incorrect view of copyright that would shield Plaintiff against mockery and criticism. (Compl. ¶ 42 (claiming that Sargon's critical speech "stifle[d]" Plaintiff's "creative liberties").) But "[c]opyright law is not designed to stifle critics." Fisher v. Dees, 794 F.2d 432, 437 (9th Cir. 1986). To the contrary. Copyright law fosters criticism.[4] Factor four favors Defendant.

The Critical Video "provide[s] social benefit by shedding light on an earlier work, and, in the process, creating a new one." Campbell, 510 U.S. at 579. To disallow it would contravene

[4] Achieving the Constitutional purpose of copyright "is an exercise in balancing the grant of property rights that incentivizes creative work, and the corresponding limits on the ability of the community to draw upon those ideas," Adjmi, 97 F. Supp. 3d at 528 (citing Leval, 103 HARVARD L. REV. at 1110 (fair use "protects secondary creativity as a legitimate concern of the copyright.")).

copyright's purpose, and permit Plaintiff "to quash … transformation and comment of which [she does] not approve." Abilene Music, 320 F. Supp. 2d at 91. Sargon's work is quintessential fair use, and fair use is not an infringement of copyright.

**III. The DMCA Misrepresentation Claim Fails**

Plaintiff's claim for DMCA Misrepresentation fails because the purported false statements are non-actionable as a matter of law. (Mot. at 23-24.) The Opposition fails even to respond.

The same claim fails for failure to allege factual matter to suggest that YouTube reinstated Sargon's video in reliance on a DMCA counter-notice. (Mot. at 22-23.) Neither the Complaint nor Plaintiff's Opposition asserts that YouTube reinstated the Critical Video based on Sargon's purported misrepresentation. (Opp. at 2, 11-12.) Formulaic recitation of elements does not save the claim. (Opp. at 12 (citing Compl. ¶¶ 56-59)).

**IV. Dismissal with Prejudice is Warranted**

Courts should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). But dismissal with prejudice, and without leave to amend, is appropriate when amendment would be futile. Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 491 (2d Cir. 2011). Here, amendment would be futile because the Critical Video is fair use as a matter of law. The Court should dismiss the Complaint with prejudice.

DATED: May 30, 2018
New York, New York

MULLEN P.C.

[signature]
_______________________________
Wesley M. Mullen (WM1212)
Mullen P.C.
200 Park Avenue, Suite 1700
New York, NY 10166
(646) 632-3718
wmullen@mullenpc.com

*Counsel for Defendant*
*Carl Benjamin*
*a/k/a Sargon of Akkad*