UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKILAH HUGHES,

                Plaintiff

       v.                                17 CV 6493 (RJS)

CARL BENJAMIN,
a/k/a Sargon of Akkad, *et al.*,

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
SARGON OF AKKAD'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Wesley M. Mullen (WM1212)
MULLEN P.C.
200 Park Avenue | Suite 1700
New York, NY 10166
(646) 632-3718
wmullen@mullenpc.com

*Counsel for Defendant*

## TABLE OF CONTENTS

- * -

**SUMMARY OF THE CASE** ............................................................................................... 1

**STANDARD** ......................................................................................................................... 2

**ARGUMENT** ....................................................................................................................... 3

    I.    **Awarding Attorney's Fees to Defendant Furthers the Purposes of the Copyright Act** ................................................... 3

        A.    Plaintiff's Claims Were Objectively Unreasonable ............................. 4

        B.    Plaintiff Litigated Her Claims Unreasonably ...................................... 6

        C.    Plaintiff's Motivations Are Contrary to the Purposes of the Copyright Act .................................................... 7

            1.    Plaintiff Attempted to Silence Criticism ................................. 7

            2.    Plaintiff Used This Lawsuit For Self-Promotion ..................... 9

            3.    Plaintiff Improperly Attempted to Extract Payment In Exchange for Settlement of Meritless Claims .....................10

    II.    **The Requested Award is Reasonable** ...........................................................11

        A.    Attorney's Fees ...................................................................................11

        B.    Costs ....................................................................................................12

**CONCLUSION** ...................................................................................................................13

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Agence Fr. Presse v. Morel*, No. 10-cv-2730 (AJN),
    2015 U.S. Dist. LEXIS 189008 (S.D.N.Y. Mar. 23, 2015) .................................................. 7

*Broadcast Music, Inc. v. PAMDH Enters.*, No. 13-CV-2255 (KMW),
    2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. Jun. 19, 2014) ................................................. 12

*Bryant v. Media Right Prods.*, 603 F.3d 135 (2d Cir. 2010) ................................................. 6

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1993) .................................................. 3

*Coach, Inc. v. Kmart Corps.*, 756 F.Supp.2d 421 (S.D.N.Y. 2010) ...................................... 8

*Creazioni Artistiche Musicali, S.R.L. v. Carlin Am., Inc.*,
    No. 14-cv-9271 (RJS), Copy. L. Rep. (CCH) at 31,132,
    2017 U.S. Dist. LEXIS 124082 (S.D.N.Y. Aug. 4, 2017) ................................................. 7

*Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*,
    246 F.3d 142 (2d Cir. 2001) ......................................................................................... 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................................. 3

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................................................ passim

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013) ........................................................ 4

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979 (2016) ..................................... passim

*Lumetrics, Inc. v. Bristol Instruments, Inc.*,
    101 F.Supp.3d 264 (S.D.N.Y. 2015) ............................................................................... 8

*Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116 (2d Cir. 2000) ......................... 3, 6

*Mitek Holdings, Inc. v. Arce Eng'g co.*, 198 F.3d 840 (11th Cir. 1999) ............................... 3

*Universal Instruments Corp. v. Micro Sys. Eng'g*, Nos. 18-2022(L),
    18-2100(XAP), --- Fed. Appx. ---, 2020 U.S. App. LEXIS 3329
    (2d Cir. Feb. 4, 2020) (Summary Order) ..................................................................... 2, 6

*Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991) ................................................ 4

<u>Statutes and Rules</u>

17 U.S.C. § 505 .......................................................................................................... passim

17 U.S.C. § 107 .................................................................................................................. 3

28 U.S.C. § 1920(2) ......................................................................................................... 12

Fed. R. Civ. P. 54 ......................................................................................................... 1, 12

Defendant respectfully submits this memorandum of law in support of his motion for attorney's fees and costs under 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d).

## SUMMARY OF THE CASE

Plaintiff is a YouTube celebrity. (*See* Opinion and Order (ECF Doc. 39) (cited as "Op.") at 1-2.) Defendant Sargon publicly "singled out" and mocked Plaintiff "to discredit [her] and her political positions." (Compl. ¶¶ 3, 42.) Plaintiff took offense at that, so she sued Sargon under the Copyright Act. The lawsuit was transparently an attempt to muzzle an ideological opponent for his critical political speech.

Even before he appeared in the case, Sargon warned Plaintiff that the fair use doctrine barred her claims. He informed Plaintiff by letter that — if she chose to proceed — Defendant would prevail and would seek attorney's fees under the Copyright Act. (Mullen Decl. ¶ 2 & Ex. A.) Plaintiff's counsel withdrew. (ECF Doc. 29.)

New counsel appeared for Plaintiff at an initial conference. There, the Court asked counsel to explain why Defendant's work is not "quintessential fair use;" the Court observed that the "only question" presented by the Complaint is whether the fair use defense "can be decided on a motion to dismiss or whether it would have to wait until summary judgment." (Mullen Decl. Ex. B ("3/9/18 Hr'g Tr.") at 10:20-11:7; 13:13-15.)

Apparently undeterred by the Court's assessment of her claims, Plaintiff then made her first and only settlement offer, demanding that Sargon pay $46,000 to settle a meritless case. (Mullen Decl. ¶ 4.) Since that amount exceeded the entire likely cost of defense, Sargon simply filed his motion to dismiss. And the Court granted it, agreeing with Defendant that "the fair use defense clearly applies based on the face of Hughes's Complaint … ." (Op. at 9.)

Defendant now respectfully seeks attorney's fees and costs as permitted under the Copyright Act, 17 U.S.C. § 505, and as promised.

## STANDARD

Section 505 of the Copyright Act, (17 U.S.C. § 505), provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. … [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. When exercising discretion to award fees, courts give "substantial weight" to the "objective reasonableness of the losing party's position," while taking into account "all other circumstances relevant to granting fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1983 (2016). Relevant circumstances include the losing party's "motivation," as well as the "need in particular circumstances to advance considerations of compensation and deterrence." *E.g.*, *Universal Instruments Corp. v. Micro Sys. Eng'g*, Nos. 18-2022(L), 18-2100(XAP), --- Fed. Appx. ---, 2020 U.S. App. LEXIS 3329, at *4 (2d Cir. Feb. 4, 2020) (Summary Order) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

Objective reasonableness is not dispositive. District courts have discretion "to make an award [of attorney fees] even when the losing party advanced a reasonable claim or defense," *Kirtsaeng*, 136 S.Ct. at 1983, if the award will "encourage the types of lawsuits that promote" the purposes of the Copyright Act, *id.* at 1986. The Supreme Court tells us that fee awards under § 505 should "encourage[] parties with strong legal positions to stand on their rights" in copyright cases, while "deter[ring] those with weak ones from proceeding with litigation." *Id.* at 1983. And fees should motivate defendants to litigate meritorious defenses

to the same extent that they do plaintiffs to litigate meritorious claims. *Fogerty*, 510 U.S. at 527.

Simply put, "the touchstone of § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act … not only to deter infringement but also to ensure that the boundaries of copyright law are demarcated as clearly as possible in order to maximize the public exposure to valuable works." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2000) (quoting *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999)) (internal citations and quotations omitted).

## ARGUMENT

### I.     Awarding Fees to Defendant Furthers The Purposes of the Copyright Act

The Copyright Act "serves the purpose of enriching the general public through access to creative works." *Kirtsaeng*, 136 S.Ct. at 1986 (citing *Fogerty*, 510 U.S. at 526-27 & U.S. CONST., art I., § 8, cl. 8). "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Fogerty*, 510 U.S. at 527 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-350 (1991)). The copyright statute itself enshrines "criticism" and "comment" as non-infringing fair use. 17 U.S.C. § 107. Transformative works, like Defendant's critical video, (*see* Op. at 6), enrich the public and therefore "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright … ," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1993).

The Copyright Act's fee-shifting provision ensures public access to transformative works by encouraging "defendants who seek to advance …  meritorious copyright defenses to litigate them." *Fogerty*, 510 U.S. at 527. Thus, as in this case, the "successful defense" of a

misguided and censorious infringement claim "further[s] the policies of the Copyright Act," and warrants an award of fees. *Id.*

### A. Plaintiff's Claims Were Objectively Unreasonable

Plaintiff's claims were objectively unreasonable because they lacked legal or factual merit right from the very start.

As the Court determined, it was "clear from the face of [the] Complaint that [Defendant] copied portions of *We Thought She Would Win* for the transformative purposes of criticism and commentary." (Op. at 6.) Plaintiff knew and admitted in her Complaint that Sargon's work was criticism because it was "demeaning" and "belittl[ing] to proponents" — like Plaintiff — "of perceived liberal social policies and stances." (*Id.* (citing Compl. ¶ 20).)

The Court approached Plaintiff's claims objectively, and it found them objectively lacking. Any "reasonable observer who came across the [allegedly infringing] video would quickly grasp its critical purpose." (*Id.* at 7.) And any "reasonable observer would plainly infer … that it was intended to criticize [Plaintiff] Hughes and comment on her perceived lack of awareness … ." (*Id.*) Since the unreasonableness was "clear" to a "reasonable observer" from the very Complaint, (*id.* at 6), the case should never have been filed.

Even the procedural posture — pre-answer dismissal on fair use grounds — speaks to Plaintiff's unreasonableness. District courts are ordinarily reluctant to make fair use determinations prior to trial because of the "fact-driven nature" of the inquiry. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991) (urging district courts to exercise "caution" in granting summary judgment on fair use grounds). Only in the exceptional case — such as this one — are all of the "facts necessary to establish the defense of fair use … evident on the face of the complaint." (*See* Op. at 4 (citing *Kelly-Brown v. Winfrey*, 717 F.3d

295, 308 (2d Cir. 2013).) Such cases are exceptional precisely because they are unreasonable. *Cf. Kirtsaeng*, 136 S.Ct. at 1987 ("The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance … .")

Even if Plaintiff sued while harboring a subjective misunderstanding about the weakness of her claims, she quickly knew or should have known her Complaint was unreasonable.[1] Roughly as soon as Defendant received a copy of the Complaint, his counsel informed Plaintiff that the "claims are meritless based on Plaintiff's own admissions." (Mullen Decl. Ex. A (Nov. 13, 2017 Ltr. from W. Mullen to M. Lee) at 1.) That same letter put Plaintiff on notice that "if [she] elect[ed] to proceed with this action," Defendant would "seek attorney fees and costs" under § 505. (*Id.* at 1, 2.)

And if Defendant's stern warning were not enough, the Court's ought to have been. Counsel for the parties appeared before Judge Sullivan in March 2018 for a conference on Defendant's anticipated motion to dismiss. The Court minced no words about the tenuousness of Plaintiff's claims. (3/9/18 Hr'g Tr. at 10:24-25 ("THE COURT: … [T]hat would seem to me to be kind of quintessential fair use, right?").) It informed Plaintiff that her Complaint described the type of "social commentary" that is "allowed and celebrated … ." (*Id.* at 13:10-11.) Indeed, according to the Court, "the only question" raised by Plaintiff's claim was "whether [fair use] can be decided on a motion to dismiss or whether it would have to wait until summary judgment." (*Id.* at 13:13-15.)

Plaintiff's second cause of action for DMCA misrepresentation was also patently meritless. The Complaint failed to allege that Defendant made any misrepresentation at all,

---

[1] The Complaint pleads that Plaintiff sued Sargon because he "singled [her] out" for criticism and "chose to selectively target Hughes based on her disparate political beliefs." (Compl. ¶ 42.) Sargon does not dispute it. The same paragraph of the Complaint confesses Plaintiff's incorrect belief that copyright law proscribes mockery if it leaves the subject feeling that "creative liberties" have been "stifled." (*Id.*)

"let alone knowing and material misrepresentations" as required to plead a viable claim. (Op. at 10.) It too ought never to have been litigated: even at the initial conference, the Court informed Plaintiff that her "second cause of action … can easily be dismissed." (3/9/18 Hr'g Tr. at 13:16-17.)

Plaintiff's claims were objectively unreasonable. That alone is a "substantial weight" tilting the scale toward fees under 17 U.S.C. § 505. *Matthew Bender*, 240 F.3d at 121-22 (collecting cases).

### B. Plaintiff Litigated Her Claims Unreasonably

Tilting further, a fee award is warranted because Plaintiff made no reasonable effort to settle or dismiss her meritless claims. A losing party's "lack of any reasonable attempt to resolve [a] litigation" is relevant to the "need in particular circumstances to advance considerations of compensation and deterrence." *Universal Instruments Corp. v. Micro Sys. Eng'g*, Nos. 18-2022(L), 18-2100(XAP), --- Fed. Appx. ---, 2020 U.S. App. LEXIS 3329, at *9 (2d Cir. Feb. 4, 2020) (Summary Order) (citing *Fogerty*, 510 U.S. at 534); *see also Bryant v. Media Right Prods.*, 603 F.3d 135, 143 (2d Cir. 2010) (weighing the "reasonable[ness]" of a losing party's conduct "in trying to resolve the case" as a factor relevant to attorney fees under 17 U.S.C. § 505). Plaintiff's conduct begs for an award because Defendant had no choice but to litigate.

Plaintiff made no settlement offer at all until after the March 2018 initial conference. Despite having been warned by the Court that her claims lacked merit, (*see supra* § I.A (citing 3/9/18 Hr'g Tr.)), Plaintiff demanded $46,000 to resolve the case. (Mullen Decl. ¶ 4.) The unreasonable demand exceeded not only any conceivable recovery, but also the cost to Defendant to have Plaintiff's claims dismissed on the merits. (*See infra.* § II.)

The reasonableness of Defendant's litigation conduct also supports a fee award. *See Kirtsaeng*, 136 S. Ct. at 1985. Here, Sargon litigated his strong fair use defense to judgment as expeditiously and efficiently as possible. He intentionally advanced only his strongest defenses so that fair use would be determined on the merits. (*Compare* Def's Pre-Motion Ltr. (ECF Doc. 19) at 2-3 (proposing motion to dismiss on multiple grounds including lack of personal jurisdiction) *with* (Def's Mot. to Dismiss (ECF Doc. 30) (seeking dismissal only under Rule 12(b)(6).) Defendant also conducted himself reasonably by retaining experienced small-firm counsel to represent him at discounted rates well below those prevailing in this District. (*Infra.* § II.A.)

    **C.**    **Plaintiff's Motivations are Contrary to the Purposes of the Copyright Act**

"[A] party is improperly motivated where it asserts claims 'not because of their inherent merit,' but rather because the party seek to 'knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain … .'" *Creazioni Artistiche Musicali, S.R.L. v. Carlin Am., Inc.*, No. 14-cv-9271 (RJS), Copy. L. Rep. (CCH) at 31,132, 2017 U.S. Dist. LEXIS 124082, at *4 (S.D.N.Y. Aug. 4, 2017) (*citing Agence Fr. Presse v. Morel*, No. 10-cv-2730 (AJN), 2015 U.S. Dist. LEXIS 189008, at *5 (S.D.N.Y. Mar. 23, 2015)) (quotations and punctuation omitted). Since Plaintiff's claims have no inherent merit, the only rational motivations for her suit are improper ones. The Plaintiff here knowingly sought at least three improper "secondary" gains that justify a fee award because they are contrary to the purposes of copyright.

    **1.**    **Plaintiff Attempted to Silence Criticism**

Plaintiff sought, through improper use of copyright, to silence critical speech by a prominent provocateur and ideological opponent. (Compl. ¶ 35.) She falsely claimed to

YouTube that Sargon's critical video infringed her copyright. (*See* Op. at 3). As a result, "YouTube … disabled public access to [Defendant's] video." (*Id.*).[2] That is plainly contrary to copyright's goal of ensuring access to critical works.

After filing the lawsuit, Plaintiff pressed on with her censorious attack. She tweeted to her (more than 100,000) Twitter followers that "this carnival barker that I'm suing for copyright infringement just got banned from [fundraising website] Patreon … . Do you think we can get @gofundme to drop him?" (*See* Mullen Decl. ¶ 5 (citing @AkilahObviously tweet (Dec. 23, 2018).) The request unmistakably incites Plaintiff's fan base to swarm Defendant off the fundraising platforms where he appealed for donations to defray costs of legal defense. (*Id.* (citing @AkilahObviously tweet (Dec. 23, 2018)) ("In [Sargon's] @gofundme [account] he lists that the funds are for [defense of] a 'frivolous lawsuit brought by Akilah Hughes.'").)

As part of the same tactics, Plaintiff later publicly suggested on Twitter that she had "reported" Defendant's "hate content" to Patreon in an attempt to have Sargon banned. (*Id.* ¶ 6.) And, in keeping with her strategy to repurpose copyright law as viewpoint-based censorship, she reblogged with apparent approval a suggestion to "drown out fascists" not by criticizing their viewpoint, but rather by "bring[ing] a speaker [to] play copyrighted music at their rallies cause it will be easy to report their videos & get them taken down … ." (*Id.* ¶ 7.)

---

[2] To the extent that Plaintiff and Defendant are both commercial participants in the marketplace for political and ideological commentary, Plaintiff's use of meritless claims to censor Sargon's speech is also copyright misuse. The doctrine of copyright misuse "bars copyright owners from recovering for infringement where they have [attempted to] extend[] the scope of their copyrights to control areas outside of the … monopoly" granted by the Copyright Act. *Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F.Supp.3d 264, 269 (S.D.N.Y. 2015) (quoting *Coach, Inc. v. Kmart Corps.*, 756 F.Supp.2d 421, 428 (S.D.N.Y. 2010)). Copyright misuse is definitionally contrary to the purposes of the Copyright Act.

Plaintiff has used this lawsuit as part of a campaign to silence criticism, (Compl. ¶ 42), precisely because it "discredit[ed Plaintiff] and her political positions … ," (*id.* ¶ 3). She then openly attempted to bar Defendant from raising funds necessary to his own legal defense. Her motivation stands opposite to the Copyright Act's goal of ensuring public access to critical works. That merits fees.

        2.      **Plaintiff Used This Lawsuit For Self-Promotion**

Plaintiff deliberately played this case for publicity. Before filing it, she teased to her fan base on Twitter that she had a "[C]hristmas present on the way" for Sargon (@Sargon_of_Akkad). (Mullen Decl. ¶ 8.)

Shortly after filing the Complaint, she promoted it to her YouTube audience in a video in which she proclaimed, "I'm suing a grown man who goes by the name Sargon." (Akilah Hughes (Akilah Obviously), *Fair Use Lawsuits, Sargon Ain't h3h3*, available at https://www.youtube.com/watch?v=Vd16eGCocRE (last visited Feb. 17, 2020).) In the same video, Plaintiff taunted the Defendant — and whipped up her own fan base — by intimating that Sargon is a poor father because he dared to criticize Plaintiff. (*Id.* ("Am I aware that Sargon has a family? Yeah! Also, I don't care, they're not my kids.").)

There is plenty more of the same. Plaintiff tweeted of Sargon: "I'm currently suing his white supremacist ass for stealing my content." (Mullen Decl. ¶ 9.) And in response to a twitter user who called her a "smarty pants … about to lose a copyright lawsuit … ," Plaintiff tweeted: "I'm gonna take hundreds of thousands of dollars USD" from Sargon. (*Id.* ¶ 10.) As demonstrated her own conduct, Plaintiff used the lawsuit to broaden and to appease her own fan base; to bait her antagonists; and otherwise to generate valuable attention and celebrity.

Perhaps not surprisingly, all of this occurred while Plaintiff planned and promoted a new book. (*See id.* ¶ 11.)

### 3. Plaintiff Improperly Attempted to Extract Payment In Exchange for Settlement of Meritless Claims

Plaintiff's public statements about the case prove that she is motivated not by the purposes of the Copyright Act, but by a desire to extract a cash settlement from the Defendant. For instance, Plaintiff publicly promised, without basis in law or fact, to take "hundreds of thousands of dollars" from Sargon. And, referring to this case, she told her followers "let's bankrupt this asshole:"



(Mullen Decl. ¶ 5.)

As discussed above, moreover, Plaintiff improperly sought to leverage the *in terrorem* value of her case into a bully settlement. (*Supra* § I.B.) Her only settlement demand of $46,000 strained the boundaries of good faith. Even if Plaintiff had established infringement, she

would be entitled only to minimal damages: as the Court found here, "there is no danger that *SJW Levels of Awareness* will usurp the market of progressive commentaries such as *We Thought She Would Win*" because "Benjamin's target audience … is obviously not the same as Hughes's target audience." (Op. at 9). Moreover — setting aside the other factors that make her claims patently meritless — there was no basis for Plaintiff to demand statutory damages, since she did not register copyright until *after* Defendant engaged in the (transformative) conduct described in the Complaint.

Plaintiff's unjustified and unreasonable settlement conduct is of a piece with her public threats to "take hundreds of thousands of dollars" and to "bankrupt" the Defendant through litigation. In the face of those tactics, Defendant was encouraged to "stand on his rights" by "the likelihood that he will recover fees from the opposing (i.e., unreasonable) party." *Kirtsaeng*, 136 S.Ct. at 1986. Awarding fees serves the ends of compensation and deterrence.

Any of these improper motives would independently support an award of attorney fees. Defendant respectfully submits that together they compel one.

## II. The Requested Award is Reasonable

### A. Attorney's Fees

Defendant requests attorney's fees in the amount of $33,419.35 — his actual and reasonable fees invoiced by and paid to defense counsel — plus approximately $5,000 for the additional costs and fees associated with this motion. Itemized billing records justifying these amounts are set forth in the accompanying declaration of Wesley M. Mullen. (*See* Mullen Decl. ¶¶ 12-19; *id.* at Ex. C (invoices)).

The invoiced fees, (*id.* Ex. C), are also summarized in the following table:

| Timekeeper Name | Title | Hours | Total Billed (Net of Discounts) | Effective Rate ($ per Hour) |
|---|---|---|---|---|
| W. Mullen, Esq. | Principal | 57.5 | $ 25,650.00 | $ 446.09 |
| P. Oh, Esq. | Of Counsel | 16.5 | $ 4,950.00 | $ 300.00 |
| S. Pearlman | Law Clerk | 43.4 | $ 1,580.00 | $ 36.41 |
| J. Nguyen | Law Clerk | 17.2 | $ 1,032.75 | $ 60.04 |
| Invoiced Costs (PACER, Copies) | - | - | $ 206.60 | - |
| | | **ATTORNEY'S FEES TOTAL** | **$ 33,419.35** | |

(*See id.*)

Courts use the lodestar method to calculate attorney fees authorized under the Copyright Act. *E.g. Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 150 (2d Cir. 2001). The actual billing arrangement between a litigant and its counsel is a significant factor in determination whether a fee is reasonable. *Id.*; *see Broadcast Music, Inc. v. PAMDH Enters.*, No. 13-CV-2255 (KMW), 2014 U.S. Dist. LEXIS 84409, at * 19 (S.D.N.Y. Jun. 19, 2014) ("A reasonable rate is the rate that a reasonable, paying client would be willing to pay.") (citations and quotations omitted). Here, Defendant seeks only the amount he actually paid for legal services necessary to prevail against Plaintiff's claims. The amount is reasonable in light of the experience of counsel, (*see* Mullen Decl. ¶¶ 12-15), the rates paid, (*id.* ¶¶ 16, 18), and the nature of the case.

**B.   Costs**

Defendant also seeks costs in the amount of $126.54, which amount he incurred in court reporters' fees. (Mullen Decl. ¶ 20 & Ex. D (Invoice)); *see* Fed. R. Civ. P. 54(d); 28 U.S.C. § 1920(2) (ordinary taxable costs include transcripts)). The transcript fee was never invoiced; thus, the cost is not duplicative of the attorney's fees request above.

## CONCLUSION

For the reasons stated above, and pursuant to 17 U.S.C. § 505, Defendant respectfully requests that the Court award him $33,419.35 in costs and attorney fees, plus the actual and reasonable costs of making this motion; plus $126.54 in taxable costs.

DATED:    February 18, 2020
         New York, New York

                                        MULLEN P.C.

                                        _____
                                        Wesley M. Mullen (WM1212)
                                        200 Park Avenue, Suite 1700
                                        New York, NY 10166
                                        (646) 632-3718
                                        wmullen@mullenpc.com

                                        *Counsel for Defendant*