UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKILAH HUGHES,

                              Plaintiff,

        -v-

CARL BENJAMIN *a/k/a Sargon of Akkad*, JOHN
DOES *1–10, inclusive*,

                              Defendants.

No. 17-cv-6493 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

        Defendant Carl Benjamin, also known as "Sargon of Akkad," brings this motion for

attorneys' fees pursuant to 17 U.S.C. § 505 following the Court's dismissal of the copyright

infringement action brought by Plaintiff Akilah Hughes against Benjamin and ten "John Doe"

defendants.  For the reasons set forth below, the Court grants Benjamin's motion and concludes

that he is entitled to $38,911.89 in attorneys' fees and costs.

## I. BACKGROUND AND PROCEDURAL HISTORY

        The Court presumes the parties' familiarity with the underlying facts and procedural

history of this case, which are set out more fully in the Court's February 3, 2020 opinion and order

(Doc. No. 39 (the "Opinion")), and offers only a short summary of each for purposes of this opinion

and order.[1]

---

[1] In deciding this motion, the Court has considered Benjamin's memorandum of law in support of his motion (Doc. No. 42 ("Def. Mem.")), Hughes's memorandum of law in opposition (Doc. No. 45 ("Pl. Mem.")), Benjamin's reply (Doc. No. 48 ("Reply")), and the exhibits and declarations filed in connection with those submissions.

On November 18, 2016, Hughes, an internet commentator and filmmaker, posted a nine-minute-and-fifty-second video titled *We Thought She Would Win* to her YouTube channel.  (*Id.* at 2; Doc. No. 32, Ex. A.)  *We Thought She Would Win* consisted of footage of Hughes at Hillary Clinton's campaign party at the Jacob Javits Convention Center in Manhattan on November 8, 2016, the night of the 2016 presidential election.  (Opinion at 2.)  In the video, Hughes related the night's events and commented on the implications of Secretary Clinton's defeat by now-President Donald Trump.  (*Id.*)

The next day, Hughes discovered that Benjamin, a fellow YouTuber but with a decidedly conservative/libertarian bent, had posted a video titled *SJW Levels of Awareness* to one of his YouTube channels.  (*Id.*)  Benjamin's video consisted entirely of six clips from *We Thought She Would Win*, totaling one minute and fifty-eight seconds, spliced together.  (*Id.*)  Hughes responded by submitting a "takedown notice" to YouTube pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, which led to YouTube disabling public access to Benjamin's video.  (*Id*. at 3.)  Benjamin immediately emailed Hughes and requested that she withdraw the takedown notice, asserting that his video fell within the fair use exception to the Copyright Act as parody or satire.  (*Id.*; Doc. No. 46-1 at 2.)  Three days later, after Hughes refused to withdraw her notice, Benjamin sent YouTube a DMCA counter notification, asserting that *SJW Levels of Awareness* was "entirely transformative and intended for parody."  (Doc. No. 1 ("Compl.") at 10 (internal quotation marks omitted); Opinion at 3.)  Thereafter, YouTube reinstated public access to Benjamin's video.  (Opinion at 3.)

On August 25, 2017, Hughes initiated this action for damages and injunctive relief.  (Compl. at 11–12.)  Hughes's complaint alleged that Benjamin infringed on her copyright of *We*

*Thought She Would Win* through his public posting on YouTube and Twitter of *SJW Levels of Awareness*.  (*Id.* at 9–10.)

Throughout the course of this litigation, Hughes prominently referenced Benjamin and the ongoing suit on Twitter.  For instance, on December 8, 2016, Hughes tweeted that she had "a [C]hristmas present on the way" for Benjamin, referring to the lawsuit.  (Doc. No. 43 at 5.)  On October 28, 2018, Hughes tweeted that she was "currently suing [Benjamin's] white supremacist ass for stealing [her] content."  (*Id.* at 6.)  Two months later, Hughes referred to Benjamin in a tweet as a "carnival barker" and expressed a desire to convince the crowdfunding platform GoFundMe to terminate Benjamin's campaign to fund his legal costs for this action and to "bankrupt" Benjamin with a libel suit.  (*Id.* at 2.)  And on February 12, 2019, Hughes replied to a tweet predicting that she would lose her copyright lawsuit by declaring that she was "gonna take hundreds of thousands of dollars USD" from Benjamin.  (*Id.* at 7.)

On February 3, 2020, the Court concluded that *SJW Levels of Awareness* plainly fell within the fair use exception to the Copyright Act and dismissed Hughes's complaint.  In particular, the Court determined that "a reasonable observer who came across [Benjamin's video] would quickly grasp its critical purpose" (Opinion at 7), that "Benjamin's target audience (generally political conservatives and libertarians) is obviously not the same as Hughes's target audience (generally political liberals)" (*id.* at 9), and that "the fair use defense clearly applies based on the face of Hughes's complaint and a review of the videos themselves" (*id.*).

Approximately two weeks later, Benjamin moved for attorneys' fees and costs under 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d).  (Doc. No. 41.)  Hughes opposes his request, arguing that she had a "good faith belief" that Benjamin violated her copyright, that her only motivation for commencing this action was to protect her copyrighted work, that she "litigated

3

her claims reasonably" by attempting to reach a settlement, that Benjamin has already received adequate compensation through his crowdsource campaign to pay his legal fees, and that an award would not deter similar litigation in the future because "widespread public criticism as a result of losing this lawsuit" has already provided a sufficient deterrent.[2]  (Pl. Mem. at 3–5.)

## II. JURISDICTION AND APPLICABLE LEGAL STANDARD

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). Section 505 of the Copyright Act allows district courts to "award a reasonable attorney's fee to the prevailing party" in a copyright action.  17 U.S.C. § 505.  Although courts possess "broad leeway" to award fees under § 505, *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016), that discretion should be exercised with an eye towards furthering the Copyright Act's purpose: "enriching the general public through access to creative works," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

While this is necessarily a holistic inquiry, the Supreme Court has identified several factors – termed the *Fogerty* factors – that help guide the analysis:  "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence."  *Kirtsaeng*, 136 S. Ct. at 1985 (quoting *Fogerty*, 510 U.S. at 534 n.19).  Of those factors, the objective unreasonableness of the losing party's position carries the most "weight."  *Id.* at 1989.  But no one factor is necessarily dispositive.  *Id.*  Indeed, a court may award fees even where the losing party put forward reasonable arguments, so long as an award would further the Copyright Act's goal of ensuring public access to new creative works.  *See id.*

---

[2] On June 11, 2020, Benjamin submitted a supplemental letter to the Court, asserting that Hughes has made several additional public statements since the Court issued its Opinion that "further justif[y] the requested award" of attorneys' fees.  (Doc. No. 50 at 1.)  Hughes responded by asserting that the Court should "strik[e]" the supplemental letter "from the record" or, alternatively, grant Hughes the opportunity to submit a reply.  (Doc. No. 51 at 1.)  The Court has not considered or relied on either of these letters in resolving Benjamin's motion.  As a result, Hughes's motion is denied.

at 1988–89; *see also Fogerty*, 510 U.S. at 534.  Consequently, courts should not award fees and costs "as a matter of course; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng*, 136 S. Ct. at 1985 (internal quotation marks omitted).

Should a court determine that an award of fees is warranted, that does not end its inquiry. It must then assess the prevailing party's requested fees to ensure that they are reasonable.  *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 150 (2d Cir. 2001).

### III. DISCUSSION

**A.      The *Fogerty* Factors Favor a Fee Award**

**1.      Objective Unreasonableness**

Objective unreasonableness, which should be given "substantial weight" when determining whether to award fees, *Kirtsaeng*, 136 S. Ct. at 1989, "is generally used to describe claims that have no legal or factual support," *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *see also Muller v. Twentieth Century Fox Film Corp.*, No. 08-cv-2550 (DC), 2011 WL 3678712, at *1 (S.D.N.Y. Aug. 22, 2011) (Chin, *J.*) ("A copyright infringement claim is objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of legal or factual basis." (internal quotation marks omitted)).  Notably, however, a position is not unreasonable merely because it is weak.  *See Leibovitz v. Paramount Pictures Corp.*, No. 94-cv-9144 (LAP), 2000 WL 1010830, at *3 (S.D.N.Y. July 21, 2000).  In addition, though the finding that a plaintiff advanced an objectively unreasonable claim can be sufficient grounds on which to award fees to the prevailing defendant, the Supreme Court has made clear that such a finding does not automatically trigger an award.  As a result, "in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones)." *Kirtsaeng*, 136 S. Ct. at 1988; *see also Matthew Bender*

& Co. v. W. Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001) (noting that "a finding of objective reasonableness [does not] necessarily preclude[] the award of fees").

Here, Hughes's claims were objectively unreasonable – a fact that was clear from the face of the complaint and the videos at the heart of the dispute.  *See Kirtsaeng*, 136 S. Ct. at 1987 (noting that "[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense").  Tellingly, the complaint describes Benjamin's video as an effort to mock and discredit Hughes, two strong indicators that the work constituted fair use as criticism.  (*E.g.*, Compl. at 2, 5.)  As the Court noted in its Opinion, "it is clear from the face of Hughes's [c]omplaint that Benjamin copied portions of *We Thought She Would Win* for the transformative purposes of criticism and commentary."  (Opinion at 6.) The Court highlighted that "[b]eginning with the title of Benjamin's work, *SJW Levels of Awareness*, Hughes herself acknowledges that 'SJW' or 'social justice warrior' is a term 'routinely used by Benjamin in a demeaning context to belittle proponents of perceived liberal social policies and stances.'"  (*Id.* (quoting Compl. at 5).)  It was therefore unmistakable that the edited video was designed to highlight and critique Hughes's alleged lack of self-awareness, not to pass off her work as Benjamin's.  Furthermore, the fact that Benjamin's video naturally targeted a completely different audience than Hughes's video (*id.* at 9), and thus did not pose a threat to the copyrighted work's market value, also demonstrated that Benjamin's video constituted fair use.  The objective unreasonableness of Hughes's claims thus weighs strongly in favor of awarding costs and fees to Benjamin.

### 2.    **Improper Motivation**

Benjamin argues that Hughes brought this suit to silence her political opponents and critics and to generate publicity for herself.  Motivation, like all the *Fogerty* factors, is not dispositive,

but "the presence of improper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees." *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007). Here, the Court has little difficulty concluding that Hughes's dual goals in bringing her baseless suit were to inflict financial harm on Benjamin and to raise her own profile in the process.

Improper or bad faith motivations are generally difficult to discern, as litigants often have a variety of objectives and may obscure their baser ones behind a veil of legitimate-sounding claims. In this case, however, Hughes openly discussed her improper motivations on both Twitter and her website. Indeed, Hughes admitted to potentially hundreds of thousands of followers that she intended to (i) "bankrupt" Benjamin (Doc. No. 43 at 2), (ii) stymy his attempts to crowdfund his legal costs (*id.* at 2–3), and (iii) use copyright laws to silence her political opponents and critics (*id.* at 4). Other posts, including her public boasting about the legal dispute on her social media accounts (even describing her complaint as a "[C]hristmas present" for Benjamin) and her public belittlement and celebrity-style feuding with Benjamin (*id.* at 5–7), strongly suggest that Hughes intended to sensationalize the litigation to elevate her own public profile and achieve a secondary financial gain. Together, then, Hughes's public comments reveal an intent to abuse the legal system in order to further a personal agenda that had little to do with the Copyright Act.

Of course, evidence of respectful conduct and efforts to efficiently and inexpensively resolve a dispute can sometimes neutralize evidence of improper motive and bad faith. *Magnum Photos Int'l v. Houk Gallery, Inc.*, No. 16-cv-7030 (VSB), 2019 WL 4686498, at *3 (S.D.N.Y. Sept. 26, 2019) (finding no improper motive or bad faith where the plaintiff engaged in settlement negotiations and agreed to streamline the litigation by limiting the scope of both discovery and summary judgment briefing). But while it is true that Hughes did make a settlement offer in this

case, the offer hardly constituted a reasonable effort to efficiently resolve the dispute.  Hughes's lone offer – to settle this baseless case for $46,000 – came on April 10, 2018.  (Doc. No. 47 at 1.) By then, the Court had already laid bare the weaknesses of Hughes's claims during the parties' pre-motion conference in early March.  (Doc No. 25 at 13 ("It seems to me you concede [in the complaint] that [the video is] mocking and anybody who goes to [Benjamin's] site would understand it to be mocking. . . .  [So] whether this case is decided in a motion to dismiss or on summary judgment, this is likely to be fair use.").)  As a result, the Court finds that Hughes litigated with an improper motive and that she never endeavored to efficiently and fairly resolve the litigation.

### 3.     Compensation and Deterrence

Compensation and deterrence, two equitable considerations that courts must also assess, exist for the dual purposes of incentivizing parties with strong claims to litigate them and deterring parties with weak claims from embarking on wasteful litigation.  *See Baker*, 431 F. Supp. 2d at 359–60.

Hughes makes much of the fact that Benjamin's GoFundMe campaign raised over $120,000 – much more than the approximately $40,000 he expended to defend this case.  (Pl. Mem. at 3–4.)  But that fact alone does not preclude an award of attorneys' fees.  Indeed, courts frequently allow recovery even where the prevailing party did not actually suffer financial harm, as in cases where a third party provided or paid for the prevailing party's legal services.  *See, e.g.*, *Latin American Music Co. v. Spanish Broad. Sys., Inc.*, No. 13-cv-1526 (RJS), 2020 WL 2848232, at *8 (S.D.N.Y. June 1, 2020) ("The fact that a prevailing party's legal fees are paid by a third party should not deprive it of the ability to recover fees for the total amount spent on successfully litigating a case."); *Radin v. Hunt*, No. CV10-08838 (JAK), 2012 WL 13006187, at *4 (C.D. Cal.

Feb. 27, 2012) (holding that "there is nothing in [§ 505] that precludes [a prevailing party] from receiving reasonable attorney's fees, even though they were indemnified"), *aff'd*, 499 F. App'x 684 (9th Cir. 2012); *ABC, Inc. v. Primetime 24, Joint Venture*, 67 F. Supp. 2d 558, 562 (M.D.N.C. 1999) ("[T]he fact that [a prevailing party's] legal fees and expenses have been paid by [a third party] may be a factor which the court considers in deciding whether to exercise its discretion in awarding fees, that fact does not bar [the prevailing party] from recovering such fees."), *aff'd*, 232 F.3d 886 (4th Cir. 2000).  Put simply, a litigant's good luck in having the financial wherewithal to defend against a frivolous suit – whether because of insurance, a GoFundMe campaign, a rich uncle, or a pro bono lawyer – does not automatically immunize the losing party from the consequences of her actions.[3]

And compensation aside, the Court must also consider deterrence.  *Kirtsaeng*, 136 S. Ct. at 1987 ("Fee awards are a double-edged sword:  They increase the reward for a victory – but also enhance the penalty for a defeat.").  While Benjamin may not be out of pocket any money, awarding fees will still further the important goal of deterring Hughes and other would-be litigants from engaging in similarly abusive conduct in the future – an outcome that is tightly aligned with the Copyright Act's goal of facilitating the general public's access to creative works.  Indeed, because Hughes does not owe Benjamin any damages, a fee award is the only financial

---

[3] To be sure, the Second Circuit has cautioned that a fee award should not "amount to a windfall for the prevailing party."  *Crescent Publ'g Grp.*, 246 F.3d at 151.  But in this context, a "windfall" refers to either an exorbitantly large award as a result of, among other things, an atypical billing arrangement between the prevailing party and her counsel, *see id.* at 150–51; *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 568–69 (2d Cir. 1994) (remanding to the trial court to "ensure that a contingent fee arrangement does not result in an unjustified windfall to plaintiff's counsel"), *overruled on other grounds by Fogerty*, 510 U.S. at 533, or awarding fees to a prevailing plaintiff who has already received a large damages award that is sufficient to both compensate her and deter future copyright abuses, *see, e.g.*, *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 485 (S.D.N.Y. 2011) (explaining that in light of a "$2.5 million statutory damage award," the plaintiff had "been appropriately compensated," and the defendant had been "sufficient[ly] deterre[d]").  In this case, Benjamin has neither received a damages award nor, as will be discussed momentarily, are the fees he seeks out-of-step with prevailing industry norms.  Accordingly, awarding fees here will not result in the type of windfall about which the Second Circuit has cautioned.

consequence that the Court may impose on Hughes to deter this conduct going forward. And Hughes's self-serving claim that the public backlash she has received from losing this suit is sufficient deterrence is not persuasive, particularly since Hughes herself played an integral role in publicizing the litigation. It also bears noting that Hughes has never claimed that she is unable to pay Benjamin's fees or that she will suffer extreme financial hardship if ordered to do so. (*See generally* Pl. Mem. at 2–5; Reply at 5.)

In short, Hughes endeavored to profit from an objectively unreasonable and frivolous suit by promoting her online profile while at the same time forcing Benjamin to wastefully devote time and resources to defending a baseless action. Since the goals of the Copyright Act are more likely to be advanced by an award of attorneys' fees, the fact that Benjamin had the support of third-party contributors through his GoFundMe campaign, though relevant, does not insulate Hughes from paying an award. Accordingly, the Court will order Hughes to pay Benjamin's fees and costs for this litigation.

**B.      Reasonableness of Attorneys' Fees**

Having determined that an award of attorneys' fees is appropriate, the Court must still assess whether the fees sought by Benjamin are reasonable. In this Circuit, courts calculate a reasonable fee "by determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Crescent Publ'g Grp.*, 246 F.3d at 146 n.3 (internal quotation marks omitted). This analysis "boils down to [asking] what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). "In making [this determination], the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience

generally as well as to the evidentiary submissions and arguments of the parties." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005). "[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Benjamin requests $33,419.35 for the attorneys' fees expended in defending against Hughes's claims (Doc. No. 41 at 1),[4] $5,366 for the fees spent on this motion (Doc. No. 49-1 at 2–3), and $126.54 in costs, which are limited to the cost of the pre-motion conference transcript (Doc. No. 41 at 1; Def. Mem. at 12).

Benjamin's lawyers – Mullen P.C. – charged the following effective hourly rates for the attorneys and law clerks who worked on this matter:  $446.09 per hour for Wesley Mullen, the principal attorney of the firm and an experienced litigator who graduated from Harvard Law School in 2007 and was admitted to practice in New York in 2008; $300 per hour for Patrick Oh, Of Counsel at Mullen P.C. and an experienced litigator who graduated from Columbia Law School in 2006 and was admitted to practice in New York in 2007; $60.04 per hour for Johnny Nguyen, a student at the Benjamin N. Cardozo School of Law and a non-attorney law clerk; and $36.41 per hour for Spencer Pearlman, a graduate of the Benjamin N. Cardozo School of Law and a non-attorney law clerk.  (*See* Def. Mem. at 12; Doc. No. 43 at 8–10.)  Notably, Mullen P.C. applied various discounts and write-offs to its billing in this matter, particularly for work performed by its law clerks.  (Doc. No. 43 at 9–10.)

It is perhaps telling that Hughes does not challenge Mullen P.C.'s rates.  In any event, courts in this district have generally found hourly rates of $400 to $750 to be appropriate for

---

[4] In fact, the invoices Benjamin submitted amount to $33,599.35.  It appears that Benjamin has omitted from his request $180 billed in January 2018.  (Doc. No. 43-3 at 6–8.)

partners in copyright and intellectual property cases.  *See, e.g.*, *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-cv-2255 (KMW), 2014 WL 2781846, at *6–7 (S.D.N.Y. June 19, 2014) (approving hourly rate of $570 for partner with 15 years' experience); *Sub–Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, 13-cv-2548 (KMW), 2014 WL 1303434, at *8–9 (S.D.N.Y. Apr. 1, 2014) (collecting cases and approving rate of $785 for a partner who specializes in copyright); *Pyatt v. Raymond*, 10-cv-8764 (CM), 2012 WL 1668248, at *5–6 (S.D.N.Y. May 10, 2012) (collecting cases approving rates ranging from $400 to $650 for partners in copyright and trademark cases); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Ltd. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (finding partner's rate of $735 to be reasonable in copyright dispute); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08-cv-6030 (GEL), 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (approving hourly rates of $600 and $650 for partners specializing in intellectual property litigation).  Consequently, the Court finds that the rates charged by Mullen and Oh are reasonable.

Regarding the rates charged by Mullen P.C. for its two law clerks – which, again, Hughes does not challenge – courts in this district have generally found hourly rates of $150 to $200 to be reasonable for paralegals in copyright cases.  *See, e.g.*, *Broad. Music*, 2014 WL 2781846, at *6–7 (approving hourly rates of $200 for paralegal with 13 years' experience, and $160 for paralegal with two years' experience); *Sub–Zero, Inc.*, 2014 WL 1303434, at *9 (collecting cases and approving an hourly rate of $200 for a paralegal); *GAKM Res. LLC*, 2009 WL 2150891, at *8 (approving a $195 hourly rate for paralegals).  Since, in the Court's experience, the rates for law clerks (who have legal training) tend to be higher than those for paralegals, the Court finds that the rates charged for Pearlman and Nguyen, which fall well below even the range of $150 to $200 per hour routinely awarded to paralegals, are reasonable.

The Court also finds that the hours expended in this case – 57.5 hours billed by Mullen, 16.5 hours billed by Oh, 43.4 hours billed by Pearlman, and 17.2 hours billed by Nguyen (Def. Mem. at 12) – were reasonable, and Hughes does not argue otherwise.  Given the nature of the issues and the quality of Mullen P.C.'s work product, the Court finds that the time expended fell within the range of "what a reasonable, paying client would . . . [deem] necessary to litigate the case effectively."  *Simmons*, 575 F.3d at 174 (internal quotation marks omitted).  For example, Mullen P.C. billed approximately 37 hours in attorney time and 55 hours in law clerk time in preparing the motion to dismiss, the memorandum of law in support of that motion, and the subsequent reply.  (*E.g.*, Doc. No. 43-3 at 12, 15, 18, 23–25.)  Additionally, the firm billed approximately 14 hours in connection with this motion for attorneys' fees (Doc. No. 49-1 at 2), an expense which is compensable, *Pig Newton, Inc. v. The Bds. of Dirs. of The Motion Picture Indus. Pension Plan*, No. 13-cv-7312 (KPF), 2016 WL 796840, at \*9 (S.D.N.Y. Feb. 24, 2016) (holding that the fees incurred in preparing a motion for attorneys' fees are compensable so long as they are reasonable).  The remaining approximately 28 hours were spent performing a variety of necessary tasks, including conferencing with Benjamin, corresponding with Hughes's counsel, and preparing for and attending the pre-motion conference.  (*E.g.*, Doc. No. 43-3 at 3, 5, 7, 10, 12, 18.)  The Court finds these amounts to be reasonable.  Additionally, the Court finds that the invoices provided by Benjamin are sufficiently detailed.  *See TufAm. Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 WL 1029553, at \*3 (S.D.N.Y. Mar. 9, 2016); *Broad. Music*, 2014 WL 2781846, at \*6. Thus, after examining the comprehensive billing receipts submitted by Benjamin, the Court concludes, based on its own experience and the practice within this Circuit, that the fees requested by Benjamin are reasonable.  The $126.54 in costs he seeks for ordering a transcript are also reasonable and compensable.  *See Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, No. 16-cv-

7084 (GBD) (KNF), 2018 WL 3300688, at *10 (S.D.N.Y. Jan. 25, 2018), *adopted*, 2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018).

## IV. CONCLUSION

In light of the findings set forth above, the Court agrees that full fees and costs should be awarded. Accordingly, IT IS HEREBY ORDERED THAT Benjamin's motion for attorneys' fees is GRANTED. Benjamin is awarded $38,785.35 in attorneys' fees. Benjamin is also awarded $126.54 in costs. The Clerk of Court is respectfully directed to terminate the motions pending at document numbers 41 and 51.

SO ORDERED.

Dated:      August 4, 2020
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation